Anderson v. Coastal Cmtys. At Ocean Ridge Plantation, Inc., 2012 NCBC 33.

| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
|---|---|
| | SUPERIOR COURT DIVISION |
| COUNTY OF BRUNSWICK | 09 CVS 1042 |
| | ("*Anderson*") |

| | |
|---|---|
| BERRY ANDERSON, et al., | ) |
|     Plaintiffs | ) |
| | ) |
|         v. | ) |
| | ) |
| COASTAL COMMUNITIES AT OCEAN | ) |
| RIDGE PLANTATION, INC., et al., | ) |
|     Defendants | ) |


| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
|---|---|
| | SUPERIOR COURT DIVISION |
| COUNTY OF BRUNSWICK | 09 CVS 3376 |
| | ("*Beadnell*") |

| | |
|---|---|
| KATHLEEN BEADNELL, et al., | ) |
|     Plaintiffs | ) |
| | ) |
|         v. | ) |
| | ) |
| COASTAL COMMUNITIES AT OCEAN | ) |
| RIDGE PLANTATION, INC., et al., | ) |
|     Defendants | ) |


| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
|---|---|
| | SUPERIOR COURT DIVISION |
| COUNTY OF BRUNSWICK | 10 CVS 314 |
| | ("*Barton*") |

| | |
|---|---|
| JOHN BARTON, et al., | ) |
|     Plaintiffs | ) |
| | ) |
|         v. | ) |
| | ) |
| COASTAL COMMUNITIES AT OCEAN | ) |
| RIDGE PLANTATION, INC., et al., | ) |

Defendants )

STATE OF NORTH CAROLINA        IN THE GENERAL COURT OF JUSTICE
                                       SUPERIOR COURT DIVISION
COUNTY OF BRUNSWICK                       10 CVS 496
                                         ("*Barry*")


JOHN BARRY, III, et al.,          )
        Plaintiffs                )
                                  )
        v.                        )
                                  )
OCEAN ISLE PALMS, INC., et al.,   )
        Defendants                )


STATE OF NORTH CAROLINA        IN THE GENERAL COURT OF JUSTICE
                                       SUPERIOR COURT DIVISION
COUNTY OF BRUNSWICK                       10 CVS 781
                                        ("*Arnesen*")


KENNETH ARNESEN, et al.,          )
        Plaintiffs                )
                                  )
        v.                        )
                                  )
RIVERS EDGE GOLF CLUB &           )
PLANTATION, INC., et al.,         )
        Defendants                )

STATE OF NORTH CAROLINA        IN THE GENERAL COURT OF JUSTICE
                                               SUPERIOR COURT DIVISION
COUNTY OF NEW HANOVER               09 CVS 1208
                                             ("*Gilmartin*")

| | |
|---|---|
| BRANCH BANKING AND TRUST COMPANY,<br>    Plaintiff | ) <br> ) <br> ) <br> ) |
| v. | ) <br> ) |
| EILEEN A. GILMARTIN,<br>    Defendant/Third-Party<br>    Plaintiff | ) <br> ) <br> ) <br> ) |
| v. | ) <br> ) |
| COASTAL COMMUNITIES AT OCEAN RIDGE PLANTATION, INC., et al.,<br>    Third-Party Defendants | ) <br> ) <br> ) |

## OPINION AND ORDER ON MOTIONS TO DISMISS

THESE CAUSES, designated mandatory complex business cases by Order of

the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. §

7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to

"G.S."); and assigned to the undersigned Chief Special Superior Court Judge for

Complex Business Cases, now come before the court upon Defendants' Motions to

Dismiss[1] (collectively, "Motions"), pursuant to Rule 12(b)(6), North Carolina Rules of

Civil Procedure ("Rule(s)"); and

---

[1] The Motions consist of the following: (a) Defendants Douglas Baxley and BaxleySmithwick PLLC's Motion to Dismiss ("Baxley Defendants' Motion"); (b) Defendants James Powell, James Powell Appraisals, LLC and Lynn Rabello's Motion to Dismiss ("Appraiser Defendants' Motion") and (c) Defendants Coastal Communities at Ocean Ridge Plantation, Inc., Coastal Communities at Ocean Ridge Plantation, LLC, River's Edge Golf Club and Plantation, Inc., River's Edge Golf Club and Plantation, LLC, Ocean Isle Palms, Inc., Ocean Isle Palms, LLC, Seawatch at Sunset Harbor, Inc., Seawatch at Sunset Harbor, LLC, Coastal Communities at Seawatch, LLC, Coastal Communities, Inc., Old Dock Land and Timber, LLC, Mark A. Saunders, Deborah Boodro, Donald Howarth, Alan Karg, MAS Properties, LLC,

THE COURT, after considering the Motions, briefs and arguments in support of and in opposition to the Motions, other submissions of counsel and appropriate matters of record, CONCLUDES that Baxley Defendants' Motion should be GRANTED, Appraiser Defendants' Motion should be GRANTED and Coastal Defendants' Motion should be GRANTED in part and DENIED in part, for the reasons stated herein.

*Hodges & Coxe PC, by C. Wes Hodges, II, Esq. and Sarah Reamer, Esq. for Plaintiffs.*

*Graebe Hanna & Welborn PLLC, by Christopher T. Graebe, Esq. and Mark R. Sigmon, Esq. for Coastal Defendants.*

*Cranfill Sumner & Hartzog LLP, by Richard Boyette, Esq. and Melody J. Canady, Esq. for Baxley Defendants.*

*Teague Campbell Dennis & Gorham, LLP, by Jacob H. Wellman, Esq. and Natalia K. Isenberg, Esq. for Appraiser Defendants.*

Jolly, Judge.

I.

PROCEDURAL HISTORY

[1] On or around April 26, 2010, Plaintiffs filed their Amended Complaints[2] in this matter. Plaintiffs allege numerous claims for relief ("Claim(s)")[3] against Defendants:[4] (1) Breach of Contract – Rescission – Coastal Defendants; (2) Breach of Contract – Alternative Claim for Damages – Coastal Defendants; (3) Breach of Contract

---

The Mortgage Company of Brunswick, Inc. and Brendan Gordon's Motion to Dismiss ("Coastal Defendants' Motion").

[2] "Amended Complaints" refers to the Second Amended Complaint in *Anderson*, the Amended Complaints in *Beadnell*, *Barton*, *Barry* and *Arnesen*, and the Second Amended Answer and Counterclaims in *Gilmartin*. The allegations in the Amended Complaints are substantially the same in all of the above actions. For convenience, when specificity is needed, the court will cite to the allegations in the Second Amended Complaint in *Anderson*, unless otherwise indicated. For clarity and consistency, the court will refer to the terms "Complaint" and "Claim" in singular fashion when referencing the Amended Complaints and Claims therein.

[3] The various Claims are individually numbered in the Amended Complaints in each separate civil action. For purposes of this Opinion and Order, it is not necessary to refer to the specific Claim numbers assigned to each Claim in each Amended Complaint.

[4] For purposes of each Claim, the specific Defendants are defined *infra* paragraphs 5 through 17.

– Specific Performance – Coastal Defendants; (4) Breach of Implied Warranty of Restrictive Covenants – Coastal Defendants; (5) Negligent Misrepresentation – Coastal Defendants; (6) Negligence – Appraiser Defendants; (7) Negligent Misrepresentation – Alternative Claim – Appraiser Defendants; (8) Fraud – All Defendants; (9) Revocation of Contract Pursuant to Interstate Land Sales Full Disclosure Act – Coastal Defendants; (10) Damages Pursuant to Interstate Land Sales Full Disclosure Act – Coastal Defendants; (11) Unjust Enrichment – All Defendants, with the exception of Baxley Defendants; (12) Violation of N.C.G.S. § 75D-4(a)(2) – All Defendants, with the exception of Baxley Defendants; (13) Breach of Duty of Good Faith and Fair Dealing/Negligent Supervision – Defendant BB&T and Four Oaks; (14) Declaratory Judgment – Contracts Void for Illegality – Coastal Defendants; (15) Actions pursuant to Civil Conspiracy – All Defendants, with the exception of Baxley Defendants; (16) Unfair and Deceptive Trade Practices – All Defendants, with the exception of Baxley Defendants; (17) Preliminary and Permanent Injunctive Relief – Coastal Defendants, BB&T, BB&T Trustee, Four Oaks and Four Oaks Trustee; (18) Equitable Estoppel – All Defendants; (19) Violations of North Carolina Mortgage Lending Act (N.C.G.S. § 53-243.01 et seq.) – BB&T and Four Oaks; (20) Breach of North Carolina Mortgage Lending Act (N.C.G.S. § 53-243.01 et seq.) – Coastal Defendants; (21) Negligence – Breach of Duties – Baxley Defendants.

[2]     On May 13, 2011, the court entered an order denying Plaintiffs' request for a preliminary injunction against Defendants BB&T and Four Oaks[5] from initiating or

---

[5] Four Oaks Bank and trustee Clifton L. Painter were initial party Defendants in *Anderson*, *Barry* and *Barton*. Plaintiffs voluntarily dismissed both Defendants from *Barton* on February 17, 2010. Subsequently, Plaintiffs voluntarily dismissed both Defendants from *Anderson* and *Barry* on October 6, 2010.

continuing foreclosure proceedings against Plaintiffs based on the court's conclusion that Plaintiffs failed to demonstrate a likelihood of success on the merits of their Claims against BB&T. The court subsequently dismissed Plaintiffs' Claims against BB&T on June 3, 2011, pursuant to Rule 12(b)(6).

[3] The Motions have been fully briefed and argued and are ripe for determination.

## II.

## FACTUAL BACKGROUND

[4] Paragraphs 5 through 26 below reflect the substance of the allegations of the Complaint.

## A.

## Parties

[5] Plaintiffs are purchasers of vacant lots (collectively, "Coastal Communities Properties") in various planned residential subdivisions[6] developed by Mark A. Saunders ("Saunders") and Coastal Communities, Inc. ("Coastal Communities"), and located in Brunswick County, North Carolina.

[6] Saunders was and is the registered agent, president, organizer, member/manager and/or sole shareholder of Coastal Communities; Coastal Communities at Ocean Ridge Plantation, Inc.; Coastal Communities at Ocean Ridge Plantation, LLC; River's Edge Golf Club & Plantation, Inc., River's Edge Golf Club & Plantation, LLC, Ocean Isle Palms, Inc.; Ocean Isle Palms, LLC ("Ocean Isle Palms"); Seawatch at Sunset Harbor, Inc.; Seawatch at Sunset Harbor, LLC; Coastal

---

[6] The four Coastal Communities subdivisions at issue in this case are (1) Ocean Ridge Plantation, (2) Ocean Isle Palms, (3) River's Edge Golf Club & Plantation and (4) Seawatch at Sunset Harbor.

Communities at Seawatch, LLC ("Seawatch"), MAS Properties, LLC ("MAS Properties"); The Mortgage Company of Brunswick, Inc. ("TMC"); Old Dock Land and Timber, LLC and various other corporate entities located in North Carolina (collectively, "Coastal Defendants").[7]

[7]     Deborah Boodro is Vice President and Marketing Manager of Coastal Communities.

[8]     At all times material to this action, Donald Howarth was the Broker-in-Charge and responsible for the management of Ocean Isle Palms.

[9]     At all times material to this action, Alan Karg was the Broker-in-Charge and responsible for the management of Seawatch.

[10]     MAS Properties is a North Carolina limited liability company with its principal office located in Brunswick County.

[11]     TMC is a North Carolina corporation with its principal office located in Brunswick County.  TMC is a residential mortgage broker company.

[12]     Brendan Gordon ("Gordon") is Vice President and managing principal of TMC.

[13]     James Powell Appraisals, LLC ("James Powell Appraisals" or "JPA") is a North Carolina limited liability company with its principal office in Brunswick County.

[14]     James Powell ("Powell") is the organizer, member and registered agent of James Powell Appraisals.

[15]     Lynn Rabello ("Rabello") is an employee, independent contractor and/or agent of Powell and James Powell Appraisals (collectively, "Appraiser Defendants").

---

[7] *Anderson* Second Am. Compl. ("Compl.") ¶ 30.  For purposes of this Opinion and Order, Defendants Deborah Boodro, Donald Howarth, Alan Karg and Brendan Gordon are also included in all references to Coastal Defendants, unless otherwise indicated.

Rabello conducted the majority of the value appraisals performed for the Coastal Communities Properties.

[16]   BaxleySmithwick PLLC ("BaxleySmithwick") is a law firm and professional limited liability company incorporated in North Carolina.

[17]   Douglas Baxley ("Baxley") was and is a member and manager of BaxleySmithwick (collectively, "Baxley Defendants").

B.

The Alleged Scheme

[18]   Plaintiffs, like many other purchasers of real property in North Carolina, bought lots in new real estate developments shortly before the national real estate bubble burst around 2008.  The number of similar lawsuits filed in this court alone following the collapse of such developments has increased dramatically.  *See, e.g., Allen v. Land Res. Grp. of N.C., LLC,* Rutherford County No. 08 CVS 1283 (N.C. Super. Ct.); *Cabrera v. Ridges at Morgan Creek, LLC,* McDowell County No. 09 CVS 544 (N.C. Super. Ct.); *Abraham v. Jauregui,* Onslow County No. 09 CVS 3608 (N.C. Super. Ct.); *Beattie v. Branch Banking & Trust Co.*, New Hanover County No. 10 CVS 3891 (N.C. Super. Ct.) and *BDM Invs. v. Wells Fargo & Co.*, Brunswick County No. 11 CVS 449 (N.C. Super. Ct.).

[19]   Plaintiffs bring these actions for damages and rescission arising out of their purchase of Coastal Communities Properties based upon allegations that Saunders, his companies and their agents, along with other participants in the alleged scheme, "concealed their conduct designed to artificially inflate the market for the sale of vacant lots in the subdivision[s], including but not limited to high-pressure and

misleading sales tactics, appraisals that reached a pre-determined result and were otherwise deficient and designed to support an inflated purchase price, irregular and deceptive brokerage and lending practices, and affixing of excessive revenue stamps on recorded deeds . . . ."[8]

[20]   Specifically, Plaintiffs allege that Saunders, through MAS Properties, purchased undeveloped and unimproved parcels of real property throughout Brunswick County and then partitioned the property into lots in proposed subdivisions.[9]  Saunders, his agents and employees of his various corporate entities marketed the subdivisions and immediately sold the lots to purchasers at grossly inflated prices.  In perpetrating this scheme, Plaintiffs allege that Saunders and his employees began misleading potential purchasers, including Plaintiffs, about (a) the infrastructure and amenities to be developed in each subdivision, (b) the availability of the property and (c) the degree of interest in the property.[10]

[21]   In order to create inflated prices, Plaintiffs allege that appraisals from other sales of properties located within older, more established phases of the coastal communities subdivisions were used to generate inflated appraisals for the lots located in the newer phases of these developments.[11]  To make sure the appraisals were inflated, Saunders made an arrangement with Powell and JPA to ensure that the appraisals would be generated as described above.[12]  Plaintiffs allege that Powell and Rabello failed to consider sales prices for lots outside of the Coastal Communities in

---

[8] *Id.* ¶ 496.
[9] *Id.* ¶¶ 62-64.
[10] *Id.* ¶ 65.
[11] *Id.* ¶¶ 105-06.
[12] *Id.*

establishing the appraised value of the lots.[13]  Plaintiffs allege that Defendants concealed their practice of manipulating appraised values, and therefore, Plaintiffs did not know that the appraisal values were inflated.

[22]    Plaintiffs allege that Saunders and TMC steered buyers to preferred lenders, like BB&T.  Plaintiffs further allege that Saunders made arrangements with these preferred lenders to ensure Plaintiffs would rely upon the manipulated appraisals.[14]

[23]    BaxleySmithwick was selected by Saunders to preside over the closings on the lots purchased by Plaintiffs.[15]  Saunders offered Plaintiffs a $500 credit for their agreement to use BaxleySmithwick in their closings.[16]  Baxley performed various legal services, including but not limited to examining title, serving as escrow agent for receipt and disbursement of closing funds, preparing loan closing documents, obtaining title insurance, recording deeds, other documents and all correspondence required to conclude the transactions.[17]  BaxleySmithwick also reported to the Register of Deeds of Brunswick County the amount of excise tax ("Revenue Stamps") due under North Carolina law.[18]

[24]    Plaintiffs allege that when calculating the amount of tax on a lot sale pursuant to G.S. 105-228.30,[19] BaxleySmithwick failed to take into consideration a

---

[13] *Id.* ¶ 109.
[14] *Id.* ¶ 119.
[15] *Id.* ¶¶ 53, 150.
[16] *Id.* ¶ 597.
[17] *Id.* ¶ 598.
[18] *Id.* ¶ 599.  Pursuant to G.S. 105-228.30, the Revenue Stamps affixed to recorded deeds are based upon the sales prices for the property reported to the register of deeds. The tax rate is $1 on each $500 of the consideration or value of the interest conveyed.  Therefore, the purchase price for real property can be calculated from the Revenue Stamps on the deed.  Appraisers, developers, real estate agents and lenders often rely upon Revenue Stamps to evaluate the purchase price of real property.
[19] *Id.* ¶ 603.

credit given to Plaintiffs by Coastal Defendants in an amount necessary to pay the interest on a lot purchase for two years.[20] Plaintiffs contend this caused each deed to carry excessive Revenue Stamps, which in turn caused the deed to reflect on its face an inflated and misleading purchase price that Defendants used to their advantage in perpetrating their fraudulent scheme.[21] The Complaint alleges that JPA and its employees/agents used the inflated consideration reported to the Register of Deeds to justify their own inflated appraisals.[22]

[25]    Plaintiffs further allege that Saunders and his agents made misrepresentations regarding the construction of the subdivisions' infrastructure and amenities as set forth in the Sales Contracts.[23] Neither the infrastructure nor the amenities were completed for the subdivisions, allegedly resulting in Plaintiffs' inability to use the Coastal Communities Properties for reasonable residential purposes.[24]

[26]    Plaintiffs are seeking breach of contract damages and rescission of contract, arguing frustration of purpose, which is based upon the current undeveloped state of the subdivisions.[25] Plaintiffs seek damages based on the difference between the value of the Coastal Communities Properties as represented by Saunders and his agents with infrastructure and amenities and the present value as it is without infrastructure and amenities.[26] Plaintiffs argue alternatively that they are entitled to

---

[20] *Id.* ¶¶ 601-03.
[21] *Id.* ¶ 604.
[22] *Id.* ¶ 606.
[23] *Id.* ¶ 413. All Plaintiffs signed written contracts to purchase property in one of the four coastal communities subdivisions. While all Plaintiffs' written contracts are not identical, the differences are minor and immaterial to the court's determination of the instant Motions. Accordingly, the court will refer collectively to Plaintiffs' written contracts for the purchase of Coastal Communities Properties as the "Sales Contracts."
[24] *Id.* ¶ 417.
[25] *Id.* ¶ 418.
[26] *Id.* ¶ 423.

specific performance of the Sales Contracts, which would include completing construction of infrastructure and amenities.[27]  Finally, Plaintiffs allege various tort and statutory claims against Defendants based on the above-mentioned alleged conduct.

III.

DISCUSSION

A.

Legal Standard

[27]    Dismissal of an action pursuant to Rule 12(b)(6) is appropriate when the complaint fails to state a claim upon which relief can be granted.  In deciding a Rule 12(b)(6) motion, the well-pleaded allegations of the complaint are taken as true and admitted, but conclusions of law or unwarranted deductions of facts are not deemed admitted. *Sutton v. Duke*, 277 N.C. 94, 98 (1970).

[28]    A complaint fails to state a claim upon which relief can be granted when (a) the complaint on its face reveals that no law supports the plaintiff's claim, (b) the complaint on its face reveals the absence of facts sufficient to make a good claim or (c) some fact disclosed in the complaint necessarily defeats the plaintiff's claim. *Jackson v. Bumgardner*, 318 N.C. 172, 175 (1986).

B.

Baxley Defendants' Motion

[29]    Plaintiffs allege Claims for negligence and fraud against Baxley Defendants.[28]  Baxley Defendants seek Rule 12(b)(6) dismissal of all Claims alleged

---

[27] *Id.* ¶ 425.

[28] At a hearing on June 9, 2011, the court orally GRANTED Baxley Defendants' Motion.  The court provides this written Opinion and Order on Baxley Defendants' Motion, pursuant to Rule 2.1(b) of the General Rules of Practice for the Superior and District Courts.

against them. The court will discuss the Claims for negligence and fraud alleged against Baxley Defendants in turn.

1.

Negligence (Attorney Malpractice) Claim

[30]    Baxley Defendants argue that Plaintiffs' Claim for negligence must be dismissed because the Complaint fails to allege facts that show Baxley Defendants owed Plaintiffs a duty to look beyond the agreed purchase price and determine the value of the property at the time of conveyance.[29]  Baxley Defendants also argue that Plaintiffs' negligence Claim should be dismissed on causation grounds.[30]

[31]    Plaintiffs respond by arguing that Baxley Defendants breached a duty owed to them by failing to act within the reasonable standard of care for closing attorneys, which requires attorneys to calculate the dollar value of Revenue Stamps based on consideration or value of the interest conveyed.[31]

[32]    To state a claim for attorney malpractice, the plaintiff must establish that the attorney breached duties owed to the plaintiff, and the attorney's negligence proximately caused damage to the plaintiff.  *Rorrer v. Cooke*, 313 N.C. 338, 355 (1985). In doing so, the plaintiff must prove that the lawyer-defendant "violated a standard of care required of similarly situated attorneys."  *Id.* at 356-57.

[33]    An attorney owes a duty to his client to (a) be competent to handle the matter at hand and possess the knowledge, skill and ability to handle the issue; (b) use his best judgment in carrying out the matter and (c) "exercise reasonable and ordinary

---

[29] Br. BaxleySmithwick PLLC Douglas Baxley Supp. Mot. Dismiss ("Baxley Defs. Memo") 8-9.
[30] They contend that (a) as a matter of law, the value of the Revenue Stamps attached to the various deeds did not cause the alleged inflated prices and (b) any lots that were valued under $250,000 were not even appraised.  *Id.* 11-12.
[31] Pls. Def. Gilmartin Mem. Opp'n Att'y Defs. Mot. Dismiss 7-9.

care and diligence in the use of his skill and in the application of his knowledge to his client's cause." *Hodges v. Carter*, 239 N.C. 517, 519 (1954). Here, Plaintiffs have made no allegations that Baxley Defendants did not possess the requisite skill, knowledge or ability to handle the transactions.[32] Thus, the issue before the court is whether Plaintiffs sufficiently have alleged that Baxley Defendants failed to use their best judgment or otherwise failed to exercise reasonable care in the application of those skills, and whether Plaintiffs were proximately damaged as a result.

[34] With regard to the excise taxes at issue, G.S. 105-228.30 provides that the tax and corresponding amount of Revenue Stamps, is calculated using "the consideration or value of the interest conveyed." Baxley Defendants argue that the consideration paid was the contract price and that trying to impose a duty on an attorney to calculate the value of the property minus incentives goes beyond the ability and skill of an attorney.[33]

[35] In response, Plaintiffs contend that attorneys have a duty to calculate Revenue Stamps based on the "actual true value" of the property, not the contract price.[34] Plaintiffs argue that only looking to the sales price is not proper, especially in atypical situations where seller incentives cause the amount actually paid to be significantly less than the contract price.[35]

[36] In support, Plaintiffs' cite a formal ethics opinion from the North Carolina State Bar ("Ethics Opinion") that discusses an attorney's ethical duty when calculating excise tax pursuant to G.S. 105-228.30. *See* N.C. St. B. 2001 Formal Ethics Op. 12

---

[32] *Id.* 7.
[33] Baxley Defs. Memo 9.
[34] *Id.*
[35] Pls. Def. Gilmartin Mem. Opp'n Att'y Defs. Mot. Dismiss 9-10.

(Oct. 19, 2001). The Ethics Opinion discusses a fact scenario where a developer sells real property in a development to a buyer for a certain purchase price, but gives the buyer a credit at closing. *Id.* The attorney at closing obtains Revenue Stamps for the deed based upon the higher price recited in the purchase contract even though the actual consideration paid by the buyer is less. *Id.* To encourage sales of other lots in the development at inflated prices, the developer claims that he sold the lot for the price reflected in the Revenue Stamps. *Id.* The Ethics Opinion concludes that such conduct involves "dishonesty and misrepresentation" on the part of the attorney because "if excess tax stamps are affixed to a deed, the higher value reflected by the tax stamps may deceive third parties." *Id.*

[37] While the Ethics Opinion raises questions about the ethical conduct of Baxley Defendants, it is not "in and of itself . . . a basis for civil liability." *Barrs v. Campbell Univ., Inc.*, 148 N.C. App. 408, 421 (2002) (quoting *McGee v. Eubanks*, 77 N.C. App. 369, 374 (1985)); *see also R. Prof. Conduct N.C. State B*. 0.2[7] ("Violation of [an ethical rule] should not give rise itself to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached.").

[38] Typically, the excise tax represented by Revenue Stamps is based upon the purchase price. To impose a duty upon a closing attorney to look beyond the purchase contract when calculating excise tax would be problematically expansive. Such a duty would require the closing attorney to determine which, if any, of the many types of incentives or credits must be deducted from the purchase price to determine

the true value of the property.  The court concludes that under the circumstances of this case, North Carolina law does not impose such a duty on Baxley Defendants.[36]

[39]    Accordingly, the court CONCLUDES that Plaintiffs have failed to allege sufficient facts to support their theory of legal malpractice against Baxley Defendants. The negligence Claim as to them therefore fails to state a claim upon which relief can be granted.  Baxley Defendants' Motion as to such Claim should be GRANTED, and the Claim should be DISMISSED.

2.

Fraud Claim

[40]    Baxley Defendants contend that Plaintiffs' fraud Claim against them should be dismissed because the Plaintiffs failed to plead the alleged fraud with particularity.[37]

[41]    Plaintiffs argue that the fraud Claim against Baxley Defendants is pleaded with sufficient particularity because Plaintiffs detail the allegedly fraudulent acts of Baxley Defendants, which involved the "affixing of excess revenue stamps to recorded deeds."[38]  Plaintiffs contend that Baxley Defendants fraudulently inflated the value of each property, resulting in the receipt of "benefits of scale."[39]

[42]    To state a claim for fraud, a complaint must allege with particularity (a) false representation or concealment of a material fact, (b) reasonably calculated to deceive, (c) made with intent to deceive, (d) which does in fact deceive and (e) resulting

---

[36] Because Plaintiffs' negligence Claim against Baxley Defendants is subject to dismissal for failure to allege a recognized legal duty owed to Plaintiffs, the court need not address the causation issues related to said Claim.
[37] Baxley Defs. Memo 12-15.
[38] Pls. Def. Gilmartin Mem. Opp'n Att'y Defs. Mot. Dismiss 12 (citing Compl. ¶ 602).
[39] *Id.*

in damage to the injured party. *Rowan Cnty. Bd. of Educ. v. U.S. Gypsum Co.*, 332 N.C. 1, 17 (1992). "An essential element of actionable fraud is that the false representation or concealment be made to the party acting thereon." *Hospira Inc. v. AlphaGary Corp.*, 194 N.C. App. 695, 699 (2009).

[43]     There is no specific allegation of fraudulent conduct on behalf of Baxley Defendants. Rather, Plaintiffs only allege that Baxley Defendants' actions contributed and allowed others, as part of a conspiracy, to commit fraudulent conduct and that Baxley Defendants benefited from the fraud. Most notably, Plaintiffs allege fraud against all Defendants, including Baxley Defendants, based on a conspiracy theory.[40] However, Baxley Defendants are specifically excluded from the separate civil conspiracy Claim of the Complaint.[41] As such, Plaintiffs do not allege any agreement between Baxley Defendants and any other Defendant sufficient to support a conspiracy claim. The mere conclusory allegation that Baxley Defendants affixed excessive revenue stamps on recorded deeds as part of a conspiracy to defraud Plaintiffs is insufficient and falls short of meeting the heightened requirements for pleading fraud.

[44]     Accordingly, the court CONCLUDES that the Plaintiffs have not alleged sufficient facts to state a fraud Claim against Baxley Defendants. The fraud Claim fails to state a claim upon which relief can be granted against Baxley Defendants. Their Motion as to such Claim should be GRANTED, and the Claim should be DISMISSED.[42]

---

[40] Compl. ¶¶ 470, 496 (alleging that "[e]ach Defendant is joined in this action as a co-conspirator"). Plaintiffs allege that each Defendant entered into an agreement with the other Defendants to commit fraud, but provide no facts to support the contention that Baxley Defendants entered such an agreement.
[41] *See id.* ¶¶ 558-62 (alleging "Actions pursuant to Civil Conspiracy" against "All Defendants, with the exception of Baxley and BaxleySmithwick").
[42] Baxley Defendants also argue that many of Plaintiffs' Claims are time barred by the applicable statutes of limitations or repose. In view of the court's dispositive ruling with regard to Plaintiffs' Claims alleged against Baxley Defendants, analysis of whether certain Plaintiffs' Claims may be time barred as to those Defendants is not necessary.

## C.

### Appraiser Defendants' Motion

[45]    Plaintiffs allege Claims against Appraiser Defendants for negligence, negligent misrepresentation, fraud, RICO violation, civil conspiracy, unjust enrichment and Chapter 75 violation.

[46]    Appraiser Defendants argue that Plaintiffs' Claims against them must be dismissed, primarily because (a) Plaintiffs fail to allege facts showing that Appraiser Defendants owed Plaintiffs a duty of reasonable care, (b) Plaintiffs fail to allege facts showing that they reasonably relied upon the appraisals, (c) Plaintiffs' allegations lack specificity to support their fraud and RICO Claims and (d) several of Plaintiffs' Claims are barred by the statute of limitations.[43]

### 1.

### Negligent Misrepresentation and Negligence Claims

[47]    Appraiser Defendants seek dismissal of Plaintiffs' negligent misrepresentation and negligence Claims,[44] contending that Plaintiffs fail to allege facts showing that Appraiser Defendants owed Plaintiffs a duty of care and Plaintiffs' justifiably relied upon Appraiser Defendants' representations.  Specifically, Appraiser Defendants argue that Plaintiffs fail to allege a duty owed and justifiable reliance because Plaintiffs were merely distant third-parties to the appraisal procurement process.[45]

---

[43] Appraiser Defs. Mem. Supp. Mot. Dismiss 6 ("Appraiser Defs. Memo")
[44] The court recognizes that the elements of a prima facie claim for negligence differ from those of a claim for negligent misrepresentation.  However, for the purposes of this Opinion and Order, the court will discuss both Claims together because they sound in the same theory of liability.  *See Williams v. United Cmty. Bank*, No. COA11-532, 2012 N.C. App. LEXIS 209 (N.C. Ct. App. Feb. 7, 2012) (analyzing appraiser negligence and negligent misrepresentation claims together).
[45] Appraiser Defs. Memo 7-8.

[48] Plaintiffs respond that the absence of contractual privity between Appraiser Defendants and themselves is not a bar to recovery in tort since the borrower is an anticipated third-party beneficiary of the subject appraisal to whom the appraiser owes a duty of care in performing the appraisal.[46] Plaintiffs further contend that they actually relied upon the appraisals because they would not have closed on the Coastal Communities Properties had the appraisals returned values showing the lots were insufficient collateral for the loans.[47]

[49] In North Carolina, "[t]he tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 206 (1988), *rev'd on other grounds*, 329 N.C. 646 (1991).

[50] The North Carolina Court of Appeals, in *Ballance v. Rinehart*, held that a licensed real estate appraiser who performs an appraisal of real property, at the request of a client, owes a prospective purchaser of such property a duty to use reasonable care in the preparation of the appraisal if the appraiser knows the prospective purchaser will rely on the appraisal. 105 N.C. App. 203, 207-08 (1992). The court of appeals in *Ballance* expressly adopted the test, as set forth by the supreme court in *Raritan*, for determining negligence liability for accountants and applied it to real estate appraisers. *Williams*, 2012 N.C. App. LEXIS 209, at *16. In turn, *Raritan* adopted a standard of liability set forth by the Restatement (Second) of Torts, which provides:

---

[46] Pls. Def. Gilmartin Mem. Opp'n Appraisal Defs. Mot. Dismiss 10.
[47] *Id.* 11.

Information Negligently Supplied for the Guidance of Others

(1)   One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2)   . . . [T]he liability stated in Subsection (1) is limited to loss suffered

(a)   by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b)   through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

*Raritan*, 322 N.C. at 209-10 (quoting Restatement (Second) of Torts § 552 (1977)).

Similar to an accountant, a real estate appraiser often performs an appraisal pursuant to a contract with an individual client, usually a lending institution, which may later distribute the appraisal to a prospective purchaser-borrower. *Ballance*, 105 N.C. App. at 207-08.  In such a situation, the real estate appraiser owes a duty to the prospective purchaser-borrower if the appraiser knows the lending institution intends to supply the appraisal to a prospective purchaser-borrower who will rely on the appraisal. *See Raritan*, 322 N.C. at 213 (quoting the Restatement (Second) of Torts § 552).[48]

[51]   Plaintiffs asserting negligence-based claims against appraisers must allege facts showing justifiable reliance in order to survive a Rule 12 motion. *See*

---

[48] The court need not address whether Appraiser Defendants owed a duty to Plaintiffs in light of the court's ruling in this Opinion and Order that Plaintiffs cannot establish direct reliance on the appraisals.

*Raritan*, 322 N.C. at 205 (affirming Rule 12(b)(6) dismissal of a negligent misrepresentation claim where the plaintiff failed to allege reliance).

[52]   Plaintiffs in this case allege in substance that they indirectly relied on the appraisal reports.[49]   However, the North Carolina Supreme Court, in *Raritan*, held that indirect reliance will not support a claim for negligent misrepresentation.  *Id*. at 204.  In *Raritan*, the plaintiff steel company ("Raritan") sued an accounting firm for losses incurred when it allegedly relied on inaccurate information contained in an audit report. *Id*. at 203.  The Intercontinental Metals Corporation ("IMC") had previously hired an accounting firm to prepare an audit of IMC's financial information, which was published in its report.  *Id*.  Subsequently, IMC ordered raw steel from Raritan on an open credit account.  *Id*.  In determining whether to extend credit to IMC, Raritan investigated IMC's financial position and allegedly relied on a Dun & Bradstreet report describing IMC's net worth, which specifically referenced the accounting firm's audit report as the source for such information.  *Id*. at 205.  Raritan then decided to extend credit to IMC and later incurred losses from the transaction.  *Id*.  Raritan sued the accounting firm for negligent misrepresentation, claiming that the firm had misrepresented IMC's net worth in the audit report.

[53]   The trial court dismissed Raritan's negligent misrepresentation claim, pursuant to Rule 12(b)(6), because Raritan's complaint admitted to having relied not on the defendant's audit report directly, but rather on the Dun & Bradstreet report that referenced the audit report.  *Id*. at 204.  The supreme court affirmed the trial court's ruling, holding:

---

[49] Plaintiffs never use the term "indirect" reliance in the Complaint.  However, as discussed below, the facts alleged clearly reflect that Plaintiffs' reliance on the appraisal reports was, at best, indirect.

Raritan alleges that it got the financial information upon which it relied, essentially IMC's net worth, not from the audited statements themselves, but from information contained in Dun & Bradstreet. This allegation, we conclude, defeats Raritan's claim for negligent misrepresentation so as to render it dismissible under Rule 12(b)(6).

. . . We conclude that a party cannot show justifiable reliance on information contained in audited financial statements without showing that he relied upon the actual financial statements themselves to obtain this information.

*Raritan*, 322 N.C. at 205-06. The supreme court further noted that a party cannot justifiably rely on an isolated piece of data not presented in its original form because there is a danger that the party may be relying on incomplete information. Specifically, the court held:

Isolated statements in the [audit] report, particularly the net worth figure, do not meaningfully stand alone; rather, they are interdependent and can be fully understood and justifiably relied on only when considered in the context of the entire report, including any qualifications of the auditor's opinion and any explanatory footnotes included in the statements.

*Id.* at 207.

[54] In sum, the court in *Raritan* affirmed dismissal of the plaintiff's negligent misrepresentation claim because the plaintiff did not *directly* rely upon the audit report in which it asserted was defective. *Id.* at 204 (emphasis added); *see also Brinkman v. Barrett Kays & Assocs., P.A.*, 155 N.C. App. 738, 742 (2003) (citing the North Carolina Pattern Jury Instructions for the rule that "[a]ctual reliance is direct reliance upon false information"). Applying *Raritan* to the present case, Plaintiffs must allege that they relied directly on the appraisal reports themselves in order to plead sufficiently a claim for negligent misrepresentation. 322 N.C. at 205-06. Post-*Raritan*, claims for negligent

misrepresentation that have failed to allege direct reliance have been susceptible to dismissal.

[55]    The North Carolina Court of Appeals, consistent with *Raritan*, held that a negligent misrepresentation claim cannot survive summary judgment where the plaintiffs only can forecast evidence of indirect, rather than direct, reliance. *Brinkman*, 155 N.C. App. at 743.  In *Brinkman*, a group of homeowners brought a negligent misrepresentation claim against designers of a low-pressure pipe system, which connected on-lot septic tank effluent pump systems to off-lot collection and disposal systems. *Id.* at 739.  The homeowners claimed that the designers of the system made false representations to the North Carolina Department of Environment and Natural Resources ("DENR") to obtain permits for the implementation of the system.  *Id.*  The homeowners alleged that they relied upon DENR's issuance of permits, and consequently the underlying misrepresentations, when deciding to purchase the properties.  *Id.*  The trial court granted the defendants' motion for summary judgment on the plaintiffs' claim and the court of appeals affirmed, holding:

> There is no evidence . . . that there was actual reliance by plaintiffs upon defendants' statements.  The statements were made to [DENR], which relied upon them and issued permits to defendants.   Plaintiffs relied upon [DENR] to fully investigate defendants' application for permits.   Plaintiffs relied upon the original permits and the re-issuance of the permits to conclude that their waste disposal system was functioning correctly.   Finally, upon discovering the misrepresentations, plaintiffs relied upon the Attorney General and [DENR] to utilize their powers under the Clean Water Act to enforce the law.  However, there is no evidence that plaintiffs relied upon statements made by defendants as required by Restatement § 552(1).

*Id.* at 743.

[56]    The *Brinkman* holding provides a conceptually instructive analogy to the present case.  For example, Plaintiffs allege here that they relied on BB&T to review and investigate the appraisal reports, produced by Appraiser Defendants, before deciding to close on Plaintiffs' loans.[50]  Thus, Plaintiffs argue that by relying on BB&T's actions, they were also relying, albeit indirectly, on Appraiser Defendants' representations provided to BB&T, which were contained in the appraisal reports.  Similarly, the *Brinkman* plaintiffs argued that they relied on DENR to review and investigate the representations made by the defendants, before DENR decided to issue permits and approve the defendants' design.  Thus, the *Brinkman* plaintiffs argued that by relying on DENR's actions, they were also relying, albeit indirectly, on the representations made by defendants to DENR.  *Id.*  The court of appeals rejected such an argument and concluded that the foregoing factual scenario could not support a negligent misrepresentation claim because the plaintiffs could only show indirect reliance on the alleged misrepresentations, which were only relayed to the plaintiffs through the actions of an intermediary.  *Id.*

[57]    Recently, the North Carolina Court of Appeals, in *Williams v. United Community Bank*, affirmed the trial court's grant of summary judgment in favor of appraisers where the plaintiffs failed to forecast evidence of reliance to support their negligence claims.  2012 N.C. App. LEXIS 209, at *17-18.  The *Williams* decision is highly instructive because the relevant facts are remarkably similar to the present case.  For example, in that case, a group of plaintiffs decided to purchase groups of lots in an undeveloped, proposed residential community.  *Id.* at *2.  The plaintiffs purchased the lots by taking out bank loans.  *Id.* at *3.  None of the purchase contracts "claimed that

---

[50] Compl. ¶¶ 155-57, 460.

the purchase price was based on an appraisal, required an appraisal, or made [the plaintiffs'] obligations to buy the lots contingent on the results of any appraisal." *Id.* at *4. After the purchase contracts were signed, the developers helped the plaintiffs secure financing by directing their loan applications to various banks. *Id.* The banks, in turn, selected a group of appraisers to appraise the lots. *Id.* All the lots were appraised at the same value, which was the exact price in the purchase contracts and the loans were approved. *Id.* at *5. The plaintiffs' complaint alleged that they "had no knowledge of, contact with, nor control over the appraisal process[,]" which was instead "controlled by [the developers] and the banks." *Id.* at *13. Further, the plaintiffs acknowledged that they did not see any of the appraisals prior to closing on their loans. *Id.* at *14.

[58]    Based on the foregoing facts, the *Williams* court recognized that the plaintiffs contracted to purchase lots and close loans "without any awareness of, much less reliance on, the . . . appraisals." *Id.* at *15. As such, the court held that the plaintiffs failed to forecast evidence of reliance on the appraisals because "they did not see and did not know [the appraisals] existed . . . ." *Id.*

[59]    Similar to the purchasers in *Williams*, Plaintiffs in the instant case purchased lots in undeveloped, proposed residential communities. Further, Plaintiffs allege that Coastal Defendants and the banks controlled the loan and appraisal process.[51] Indeed, the banks procured the appraisals and subsequently approved Plaintiffs' loan applications.[52] Plaintiffs do not allege that they ever viewed or read the appraisal reports prior to signing their purchase contracts or closing on their loans. Instead, Plaintiffs' argue, in conclusory fashion, that they relied on the appraisals

---

[51] *Id.* ¶ 115.
[52] *Id.* ¶¶ 124, 128, 151-53.

"regardless of whether they viewed the appraisal report" because "if the appraisal reports reflected fair market values below the purchase price, none of the Plaintiffs would have moved forward and closed the loan."[53]  More specifically, Plaintiffs allege that "[t]hrough the acceptance of the appraisals by their lender [BB&T], the Plaintiffs relied on the false and misleading information supplied by [Appraiser Defendants], and the Plaintiffs' reliance was justifiable."[54]  In other words, Plaintiffs contend that they indirectly relied on the appraisal reports because BB&T presumably reviewed the reports and decided to close on their loans, implying that the lots appraised for the value of the loans.[55]  Thus, because BB&T decided to close on their loans, Plaintiffs assumed that the appraisal reports supported the loans and were not defective.

[60]    Plaintiffs also allege, like the purchasers in *Williams*, that if Appraiser Defendants had disclosed any of the flaws in their appraisal reports or if Plaintiffs knew that the lots were overvalued, they would not have closed on their loans, and that they subsequently lost money as a result of the purchases.[56]  However, Plaintiffs' Complaint makes it clear that they were not involved in the appraisal process, which was instead controlled by Coastal Defendants and BB&T.[57]  Further, Plaintiffs do not allege that they viewed any of the appraisals prior to signing the purchase contracts, which in any event were not contingent upon the appraised values for the lots.[58]  Consequently, Plaintiffs

---

[53] Pls. Def. Gilmartin Mem. Opp'n Appraisal Defs. Mot. Dismiss 6.

[54] Compl. ¶ 460.

[55] Plaintiffs argue that BB&T's failure either to discover or disclose the defects in the appraisal reports was a proximate cause of Plaintiffs' alleged losses.  Pls. Def. Gilmartin Mem. Opp'n Appraisal Defs. Mot. Dismiss 13; *see also* Compl. ¶¶ 155-57 (alleging that BB&T "failed to maintain adequate and appropriate compliance reviews of the appraisals which would have alerted the Defendant BB&T that the appraisals were flawed and the lot prices were inflated").

[56] Compl. ¶ 118.

[57] *Id.* ¶ 115.

[58] After reviewing the Complaint, it appears that most, if not all, appraisals were performed after Plaintiffs executed their respective purchase contracts.

do not, and cannot, allege that they ever relied upon any appraisal of the property before they agreed to purchase said property. Moreover, Plaintiffs do not allege that they viewed the appraisals before closing on their loans with BB&T. Actual reliance is particularly lacking as to certain Plaintiffs who allege that their appraisal was performed after they closed on the loans.[59]

[61]    All of Plaintiffs' allegations indicate that they made their decisions to invest in the Coastal Communities Properties and contracted to do so without any awareness of, much less reliance on, the appraisal reports. Even if Appraiser Defendants had appraised the lots differently, Plaintiffs still would have been obligated to purchase the lots at the prices agreed to in the purchase contracts. Plaintiffs cannot have relied upon information they did not see or know existed (or did not in fact exist) at the time of their decisions to purchase. *Williams*, 2012 N.C. App. LEXIS 209, at *15.

[62]    Following *Raritan*, *Brinkman* and *Williams*, the court must disagree with Plaintiffs' argument that they "need not be *directly* involved in procurement of the appraisals to reasonably rely upon their accuracy in connection with the lending process"[60] to establish a claim for negligent misrepresentation. To the contrary, *direct* reliance is precisely what is required to state a claim against Appraiser Defendants. *Raritan*, 322 N.C. at 205-06; *Brinkman*, 155 N.C. App. at 743; *Williams*, 2012 N.C. App. LEXIS 209, at *13-17. At best, Plaintiffs have alleged indirect reliance on the appraisal reports. Consequently, Plaintiffs' failure to allege that they relied directly on the appraisal reports themselves is fatal to their Claims. *Raritan*, 322 N.C. at 205-06.

---

[59] For example, Plaintiffs Gilmartin, Brigham, Geralomo and Patno each allege that they closed on the property and received their loans before their appraisals were performed. Gilmartin Sec. Am. Answer & Countercl. ¶ 413, Barton Am. Compl. ¶¶ 305, 307, 340, 364-65.
[60] Pls. Def. Gilmartin Mem. Opp'n Appraisal Defs. Mot. Dismiss 13.

[63]     Accordingly, in the absence of factual allegations supporting actual and direct reliance upon the appraisals, the court is forced to CONCLUDE that Plaintiffs have failed to state either negligence or negligent misrepresentation Claims upon which relief can be granted against Appraiser Defendants.  Their Motion as to such Claims should be GRANTED, and the Claims should be DISMISSED.

2.

Fraud and RICO Claims

[64]     Similar to the above-mentioned negligence-based Claims, Plaintiffs' fraud and RICO Claims against Appraiser Defendants are also based on the alleged misrepresentations contained in the appraisal reports.

[65]     Appraiser Defendants seek dismissal of Plaintiffs' fraud and RICO Claims on the grounds that they are not pleaded with the requisite particularity and also because Plaintiffs have failed to allege facts establishing reasonable reliance.[61]

[66]     As discussed above, Plaintiffs have not alleged facts sufficient to show that they relied on the representations made by Appraiser Defendants.  Accordingly, the court CONCLUDES that Plaintiffs have failed to state fraud and RICO Claims[62] upon which relief can be granted against Appraiser Defendants.  Their Motion as to such Claims should be GRANTED, and those Claims should be DISMISSED.

---

[61] Appraiser Defs. Memo 11-14.

[62] The court recognizes that reliance is not an explicit element to a RICO claim under G.S. 75D-4. However, the plaintiff must allege that he was injured by the racketeering scheme. *Hoke v. E.F. Hutton & Co.*, 91 N.C. App. 159, 163 (1988).  More specifically, the plaintiff must establish that his injury "has been caused by the conduct constituting the [RICO] violation." *Id.*  Here, Plaintiffs allege that Appraiser Defendants' conduct in performing "fraudulent, misleading and inflated appraisals" as part of the "Saunders Development Enterprise" constituted a RICO violation.  Compl. ¶ 390.  As discussed *supra*, such conduct did not proximately cause injury to Plaintiffs, due to their lack of reliance on the appraisals. Therefore, the conduct is not actionable under RICO.

3.

Unjust Enrichment Claim

[67]    "In order to properly set out a claim for unjust enrichment, a plaintiff must allege that property or benefits were conferred on a defendant under circumstances which give rise to a legal or equitable obligation on the part of the defendant to account for the benefits received . . . ."  *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 417 (2000).

[68]    Plaintiffs raise the doctrine of unjust enrichment against all Defendants. However, none of the factual allegations giving rise to this Claim relate to the conduct of Appraiser Defendants.  For example, Plaintiffs allege that "the Defendants sold, arranged for financing and/or financed properties within the Saunders developments to the Plaintiffs at inflated prices, and benefitted thereby through receipt of money and fees that were artificially inflated or unreasonably high."[63]  Nowhere in the Complaint do Plaintiffs allege that Appraiser Defendants sold, arranged for financing or financed the properties.  Nor are there allegations to suggest that Appraiser Defendants received an "artificially inflated" or "unreasonably high" fee for their services.

[69]    Accordingly, the court CONCLUDES that Plaintiffs have failed to state an unjust enrichment Claim upon which relief can be granted against Appraiser Defendants.  Their Motion as to such Claim should be GRANTED, and the Claim should be DISMISSED.

---

[63] Compl. ¶ 525

4.

## Chapter 75 Claim

[70]   To state a claim for unfair and deceptive trade practices under G.S. 75-1.1, the plaintiff must allege that: "(1) the defendant committed an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff or to the plaintiff's business." *Williams*, 2012 N.C. App. LEXIS 209, at \*12-13 (quoting *Sunset Beach Dev., LLC v. Amec, Inc.*, 196 N.C. App. 202, 211 (2009)).  "Where an unfair or deceptive practice claim is based upon an alleged misrepresentation by the defendant, the plaintiff must show actual reliance on the alleged misrepresentation in order to establish that the alleged misrepresentation proximately caused the injury of which plaintiff complains." *Id.*

[71]   Plaintiffs' Chapter 75 Claim against Appraiser Defendants is summarily pleaded and presumably based on the alleged misrepresentations in the appraisal reports.  As discussed above, Plaintiffs have not alleged facts sufficient to show that they relied on the representations made by Appraiser Defendants.  Accordingly, the court CONCLUDES that Plaintiffs have failed to state a Chapter 75 Claim upon which relief can be granted against Appraiser Defendants.  Their Motion as to such Claim should be GRANTED, and the Claim should be DISMISSED.

5.

## Civil Conspiracy Claim

[72]   Plaintiffs have included Appraiser Defendants in their Civil Conspiracy Claim.

[73]    "In order to state a claim for civil conspiracy, a complaint must allege 'a conspiracy, wrongful acts done by certain of the alleged conspirators, and injury.'" *Norman*, 140 N.C. App. at 416 (quoting *Henry v. Deen*, 310 N.C. 75, 87 (1984)).  When pursuing a claim for civil conspiracy, recovery is based upon the underlying alleged wrongful, overt act.  *Fox v. Wilson*, 85 N.C. App. 292, 301 (1987).  A civil conspiracy claim is subject to dismissal when the underlying causes of action, which contain the alleged wrongful acts, are dismissed.  *See Dove v. Harvey*, 168 N.C. App. 687, 690-91, 694 (2005).

[74]    As discussed above, the court has concluded that all underlying Claims alleged against Appraiser Defendants are subject to dismissal.  Consequently, Plaintiffs have failed to allege sufficiently that Appraiser Defendants committed any independent wrongful acts as to Plaintiffs.  Rather, the remaining wrongful acts alleged in this case are those attributed to Coastal Defendants.  The crux of Plaintiffs' Complaint is that Coastal Defendants promised lavish amenities and infrastructure, but they have not built them; therefore, Plaintiffs overpaid because the purchased property, without the amenities, is not worth what they paid for it.  There are no allegations that Appraiser Defendants joined in any conspiracy relative to the fraudulent or negligent inducement of lot sales based on the promise of future amenities.  The causal nexus between the injury complained of by Plaintiffs and the alleged conduct of Appraiser Defendants is virtually non-existent and is not sufficient to support a civil conspiracy Claim against Appraiser Defendants.[64]

---

[64] The court recognizes that under certain circumstances, a civil conspiracy claim may be viable against a defendant who has not committed any act against the plaintiff that, standing alone, would be wrongful. *See GoRhinoGo, LLC v. Lewis*, 2011 NCBC 38, ¶¶ 35-36 (N.C. Super. Ct. Sept. 29, 2011) ("[A]n otherwise lawful act can become an unlawful act when it is part of a conspiratorial plan.").  However, in

[75]    Accordingly, the court CONCLUDES that Plaintiffs have failed to state a conspiracy Claim upon which relief can be granted against Appraiser Defendants. Their Motion as to such Claim should be GRANTED, and the Claim should be DISMISSED.

D.

Coastal Defendants' Motion

[76]    Coastal Defendants' Motion seeks dismissal of Plaintiffs' Complaint, primarily based on the contention that the actual Sales Contracts Plaintiffs entered into do not contain deadlines for when Coastal Defendants were required to finish infrastructure and amenities for the Coastal Communities. Coastal Defendants argue that "virtually all of [Plaintiffs'] [C]laims" depend on the existence of a contractual deadline for completion of the Coastal Communities infrastructure and amenities.[65]

[77]    It appears that certain Plaintiffs' Claims against Coastal Defendants can be divided into the general categories of (a) breach of contract Claims and (b) fraud-based Claims.[66] Plaintiffs also allege other Claims against Coastal Defendants (c) for negligent misrepresentation, (d) under the Interstate Land Sales Full Disclosure Act ("ILSA"), (e) for unjust enrichment, (f) for declaratory judgment, (g) under the North

---

*GoRhinoGo*, the allegation and evidentiary forecast was that the defendant landlord, in terminating a lease with the plaintiff, was engaged in active concert with other defendants in a plan designed to harm the plaintiff's business, a result that involved a breach of fiduciary duty one defendant owed to the plaintiff. *Id.* at ¶¶ 32-33. The alleged injury from that breach was a direct result of the defendant landlord's participation in the alleged conspiracy. *Id.* at ¶ 39. Here, the causal relationship between the alleged actions of Appraiser Defendants and those of Coastal Defendants is too tenuous.

[65] Br. Supp. Coastal Defs. Mot. Dismiss ("Coastal Defs. Memo") 4-5.

[66] The court deems Plaintiffs' "fraud-based Claims" against Coastal Defendants to include the following: Eighth Claim for Relief – Fraud; Twelfth Claim for Relief – Violation of N.C.G.S. § 75D-4(a)(2); Fifteenth Claim for Relief – Actions pursuant to Civil Conspiracy and Sixteenth Claim for Relief – Unfair and Deceptive Trade Practices.

Carolina Mortgage Lending Act ("MLA")[67] and (h) for equitable estoppel. The court will address in turn each category of Claims against Coastal Defendants.

1.

Breach of Contract Claims

[78] Plaintiffs seek the following breach of contract Claims against Coastal Defendants: (1) Breach of Contract – Rescission, (2) Breach of Contract – Alternative Claim for Damages, (3) Breach of Contract – Specific Performance and (4) Breach of Implied Warranty of Restrictive Covenants.

[79] In substance, Plaintiffs contend that Coastal Defendants breached the Sales Contracts by failing to complete the promised amenities and infrastructure in a timely manner. Plaintiffs' breach of contract Claims are based on alleged breach of terms and provisions arising from the Sales Contracts entered into between the parties, written disclosures and marketing materials provided by Coastal Defendants to Plaintiffs and oral representations made by Coastal Defendants. Plaintiffs also allege that Coastal Defendants made representations that infrastructure and amenities would be completed within a two or three year period.[68] Plaintiffs contend that these representations created a contract and Coastal Defendants have breached that contract.

[80] Related to the breach of contract Claims, Plaintiffs also allege a Claim against Coastal Defendants for Breach of Implied Warranty of Restrictive Covenants.[69] Plaintiffs contend that Coastal Defendants warranted through recorded restrictive

---

[67] In 2009, the MLA was repealed and replaced by the Secure and Fair Enforcement Mortgage Licensing Act, G.S. 53-244.010, *et seq.*
[68] Compl. ¶ 416.
[69] *Id.* ¶¶ 426-31.

covenants that the Coastal Communities Properties shall only be used for single-family residential purposes, then breached those warranties by conveying lots to Plaintiffs that cannot be used for residential purposes. Plaintiffs' theory in support of the breach of implied warranty Claim is analogous to the theory in support of the breach of contract Claims.

[81] Coastal Defendants contend that the Sales Contracts control, not any alleged representations made outside the Sales Contracts, and the Sales Contracts merely provide "estimated" dates for completion of infrastructure and amenities, not binding contractual deadlines.[70]

[82] In response to Coastal Defendants' argument that there are no binding contractual deadlines, Plaintiffs contend, in substance, that an implied promise arose from the totality of the circumstances that Coastal Defendants would complete the infrastructure and amenities within a reasonable period of time.[71] Plaintiffs further contend that Coastal Defendants have breached this implied promise by failing to complete the infrastructure and amenities a number of years after such promises were made.[72]

[83] Accepting the factual allegations of the Complaint as true, and guided by the seminal decision of *Sutton v. Duke*, the court is unable to conclude that the Complaint reveals on its face (a) that no law supports Plaintiffs' contract-based Claims, (b) the absence of facts sufficient to make such Claims or (c) some fact that necessarily defeats such Claims. *Jackson*, 318 N.C. at 175.

---

[70] Coastal Defs. Memo 13.
[71] Pls. Def. Gilmartin Mem. Opp'n Coastal Defs. Mot. Dismiss 12, 14, 23.
[72] *Id.*

[84]    Accordingly, the court CONCLUDES that Plaintiffs have alleged facts sufficient to state contract-based Claims upon which relief can be granted against Coastal Defendants' for breach of contract, breach of implied warranty of restrictive covenants, rescission and specific performance.  Coastal Defendants' Motion as to such Claims therefore should be DENIED.

2.

Fraud-Based Claims

[85]    As to Plaintiffs' fraud-based Claims, the court is unable to conclude that the Complaint reveals on its face (a) that no law supports Plaintiffs' Claims, (b) the absence of facts sufficient to make such Claims or (c) some fact that necessarily defeats the Claims.  *Sutton*, 277 N.C. at 98; *Jackson*, 318 N.C. at 175.

[86]    Accordingly, the court CONCLUDES that Plaintiffs have alleged facts sufficient to state fraud-based Claims upon which relief can be granted against Coastal Defendants.  Coastal Defendants' Motion as to such Claims therefore should be DENIED.

3.

Negligent Misrepresentation Claim

[87]    In addition to their fraud-based Claims, Plaintiffs allege a Claim of negligent misrepresentation against Coastal Defendants, based on the alleged misrepresentations of the completion dates for the infrastructure and amenities.[73]

[88]    Coastal Defendants seek dismissal of Plaintiffs' negligent misrepresentation Claim on grounds that the Complaint does not specify a duty owed and the factual allegations do not establish reasonable reliance.[74]

---

[73] Compl. ¶ 444.

[89] "The tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Raritan*, 322 N.C. at 206.

[90] The MLA may create a duty sufficient to support a claim for negligent misrepresentation. *See, e.g.*, *Guyton v. FM Lending Servs., Inc.*, 199 N.C. App. 30, 48-49 (2009) (recognizing that an allegation that the MLA may create a duty is sufficient to survive a Rule 12(b)(6) motion). Specifically, the MLA provides that mortgage brokers, as defined under the Act, have a duty to disclose truthful, material information to potential real estate buyers and loan applicants. G.S. 52-243.11.

[91] Here, Coastal Defendants, specifically TMC and Gordon, were acting as mortgage brokers under the MLA and therefore owed a duty of care to Plaintiffs. As such, the alleged duty of care under the MLA is sufficient to support Plaintiffs' negligent misrepresentation Claim. *Guyton*, 199 N.C. App. at 48-49.

[92] Coastal Defendants also contend that Plaintiffs' negligent misrepresentation Claim fails because Plaintiffs cannot allege reasonable reliance based on the fact that they were given HUD Reports[75] and other documents with "estimated" completion dates of infrastructure and amenities.[76] Coastal Defendants argue that, as a matter of law, Plaintiffs cannot reasonably rely on alleged oral misrepresentations when they were provided with conflicting written representations.[77]

---

[74] Coastal Defs. Memo 26.
[75] The United States Department of Housing and Urban Development ("HUD") requires that certain warnings and disclosures be made in writing to purchasers of lots in large subdivisions that meet certain statutory criteria. *See* 15 U.S.C. § 1701 *et seq*. These disclosures are contained in a HUD Property Report ("HUD Report").
[76] Coastal Defs. Memo 26.
[77] *Id.*

[93]     Plaintiffs allege and argue that they justifiably relied on the oral representations made by Coastal Defendants regarding the completion dates of infrastructure and amenities.[78]

[94]     Whether Plaintiffs reasonably relied on any information provided by Coastal Defendants or failed to exercise reasonable diligence likely will be a question of fact for the jury.  *See Marcus Bros. Textiles v. Price Waterhouse*, *LLP*, 350 N.C. 214, 224-25 (1999) (recognizing that reasonable reliance is generally a question for the jury, unless the facts are so clear as to permit only one conclusion).  At this stage of the litigation, the Complaint raises triable issues of fact regarding the reasonableness of Plaintiffs' reliance upon Coastal Defendants' alleged oral misrepresentations regarding firm completion dates of infrastructure and amenities, in light of conflicting written estimated dates in the HUD Reports.

[95]     As to Plaintiffs' negligent misrepresentation Claim, the court is unable to conclude that the Complaint reveals on its face (a) that no law supports Plaintiffs' Claim, (b) the absence of facts sufficient to make such Claim or (c) some fact that necessarily defeats the Claim.  *Sutton*, 277 N.C. at 98; *Jackson*, 318 N.C. at 175.

[96]     Accordingly, the court CONCLUDES that Plaintiffs have alleged facts sufficient to state a negligent misrepresentation Claim upon which relief can be granted against Coastal Defendants.  Coastal Defendants' Motion as to such Claim therefore should be DENIED.

---

[78] Compl. ¶ 442.

4.

## ILSA Claims

[97]    Plaintiffs allege two Claims under ILSA, which prohibits developers from defrauding purchasers of real property.  The first Claim seeks rescission and the second Claim seeks damages.  Both Claims appear to be predicated on the same facts, and the only difference is the remedy.[79]

[98]    Coastal Defendants' Motion seeks dismissal of Plaintiffs' ILSA Claims, based largely on the contention that the Claims are barred by the statute of limitations and are insufficiently pled like the other fraud-based Claims.[80]

[99]    ILSA contains two primary prohibitions, which Plaintiffs allege were violated by Coastal Defendants.  The first prohibition, under §§ 1703(a)(1) and 1703(a)(2)(D), provides that developers shall not:

> (a)(1)(A) sell or lease any lot unless a statement of record with respect to such lot is in effect in accordance with section 1407 [15 U.S.C. § 1706]; (a)(1)(B) sell or lease any lot unless a printed property report, meeting the requirements of section 1408 [15 U.S.C. § 1707], has been furnished to the purchaser or lessee in advance of the signing of any contract or agreement by such purchaser or lessee; (a)(1)(C) sell or lease any lot where any part of the statement of record or the property report contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein pursuant to sections 1405 through 1408 of this title [15 U.S.C. §§ 1704 through 1707] or any regulations thereunder; (a)(1)(D) display or deliver to prospective purchasers or lessees advertising and promotional material which is inconsistent with information required to be disclosed in the property report; [. . .] (a)(2)(D) represent that roads, sewers, water, gas, or electric service, or recreational amenities will be provided or completed by the developer without stipulating in the contract of sale or lease that such services or amenities will be provided or completed.

---

[79] *See, e.g.*, Compl. ¶¶ 502-23.
[80] Coastal Defs. Memo 27-28.

§§ 1703(a)(1)(A)-(D), (a)(2)(D).

[100]  The second prohibition, under § 1703(a)(2), provides that developers shall

not:

> (a)(2)(A) employ any device, scheme, or artifice to defraud;
> (a)(2)(B) obtain money or property by means of any untrue
> statement of a material fact, or any omission to state a
> material fact necessary in order to make the statements
> made (in light of the circumstances in which they were made
> and within the context of the overall offer and sale or lease)
> not misleading, with respect to any information pertinent to
> the lot or subdivision; (a)(2)(C) engage in any transaction,
> practice, or course of business which operates or would
> operate as a fraud or deceit upon a purchaser . . .

§ 1703(a)(2)(A)-(C).

[101]  ILSA also has a statute of limitations under § 1711.  For claims brought

under §§ 1703(a)(1) or 1703(a)(2)(D), the limitations period is three years from the date

of signing the written contract for sale.  § 1711(a)(1).

[102]  Here, Plaintiffs concede the undisputed facts that the Sales Contracts

were signed more than three years before the Complaint was filed.  However, Plaintiffs

contend that circumstances, particularly Coastal Defendants' fraudulent conduct, justify

invoking the doctrine of equitable estoppel to preclude the statute of limitations

defense.[81]

[103]  Coastal Defendants contend that § 1711(a)(1) is not subject to equitable

tolling or equitable estoppel.  *See Allen v. Land Res. Grp. of N.C., LLC*, No. 08 CVS

1283, Order Filed Dec. 7, 2009 (N.C. Super. Ct.) (recognizing that § 1711(a)(1) does

not provide for equitable estoppel "under the circumstances of this case").  However,

the court is unable to locate any authority holding that equitable estoppel is per se

---

[81] Pls. Def. Gilmartin Mem. Opp'n Coastal Defs. Mot. Dismiss 30.

inapplicable to the limitations period of § 1711(a). Instead, the case law interpreting §1711, generally, recognizes that equitable estoppel may apply to bar application of ILSA's statute of limitations. *See Cange v. Stotler & Co.*, 826 F.2d 581, 586 (7th Cir. 1987) (citing *Bomba v. W.L. Belvidere, Inc.*, 579 F.2d 1067, 1070 (7th Cir. 1978)); *Darms v. McCulloch Oil Corp.*, 720 F.2d 490, 493-94 (8th Cir. 1983); *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1042-43 (10th Cir. 1980). As discussed below, there exist factual issues regarding whether equitable estoppel may apply under the circumstances of this case. As such, Coastal Defendants' Motion as to Plaintiffs' ILSA Claim under §§ 1703(a)(1) or 1703(a)(2)(D) should be DENIED.

[104] Coastal Defendants also contend that Plaintiffs' ILSA Claim under § 1703(a)(2)(A)-(C) is time barred.

[105] The statute of limitations for a claim under § 1703(a)(2)(A)-(C) is "three years after discovery of the violation or after discovery should have been made by the exercise of reasonable diligence." § 1711(a)(2). The determination of whether more than three years has passed after Plaintiffs discovered or should have discovered Coastal Defendants' alleged fraud and deceit violations under § 1703(a)(2) generally is a question of fact for the jury. *Alpine Prop. Owners Ass'n v. Mountaintop Dev. Co.*, 365 S.E.2d 57, 65 n.14 (W. Va. 1987) (recognizing that the discovery period in § 1711(a)(2) presents a question of fact).

[106] Plaintiffs have alleged that they did not become aware of Coastal Defendants' alleged misrepresentations until they discovered Coastal Defendants were making similar representations in various other undeveloped subdivisions.[82] Specifically, Plaintiffs allege a "continuing series" of misrepresentation and

---

[82] *See* Compl. ¶¶ 383, 385, 518.

concealment, which extends well within the three year limitations period.[83] Taking the allegations as true and in a light most favorable to Plaintiffs, their ILSA Claim under § 1703(a)(2) is not time barred because of their delayed discovery of the violations. Further, the applicability of equitable estoppel to the limitations period of § 1711(a)(2) typically is a question of fact. Accordingly, the court is unable to conclude, as a matter of law, that Plaintiffs' ILSA Claim under § 1703(a)(2)(A)-(C) is barred by the statute of limitations.

[107]   Additionally, as mentioned in paragraph 86 above, the court concluded that Plaintiffs have alleged sufficient facts to state common law fraud-based Claims against Coastal Defendants. The underlying alleged facts supporting Plaintiffs' ILSA Claim under § 1703(a)(2)(A)-(C) are analogous to Plaintiffs' common law fraud-based Claims. Accordingly, the court CONCLUDES that Plaintiffs also sufficiently have alleged an ILSA Claim under § 1703(a)(2) against Coastal Defendants. Therefore, Coastal Defendants' Motion as to such Claim should be DENIED.

5.

Unjust Enrichment Claim

[108]   It is well established that a party may not maintain an action for unjust enrichment when the parties have an express contract. *Booe v. Shadrick*, 322 N.C. 567, 570 (1988). Plaintiffs allege that they had express purchase contracts with Coastal Defendants Ocean Ridge, Ocean Isle Palms, Rivers Edge and Sea Watch. However, there are other "Coastal Defendants" with which Plaintiffs do not allege to have express purchase contracts.[84] Yet, Plaintiffs' Eleventh Claim for Relief seeks recovery for unjust

---

[83] *Id.*
[84] *See id.* ¶¶ 524-29.

enrichment against all Coastal Defendants. The unjust enrichment Claim is so summarily plead that it is not possible on the face of the Complaint to determine which Coastal Defendants might be subjected to liability under this Claim, and which Coastal Defendants should respond to and defend the Claim.

[109] The unjust enrichment Claim does not meet the North Carolina standards of notice pleading, and fails to allege sufficient facts to support unjust enrichment against any Coastal Defendants. Accordingly, the court CONCLUDES that the unjust enrichment Claim fails to state a claim upon which relief can be granted. Coastal Defendants' Motion as to such Claim should be GRANTED, and the Claim should be DISMISSED.

6.

Declaratory Judgment Claim – Contract Void for Illegality

[110] Plaintiffs' allege that Coastal Defendants violated town and county ordinances that regulate the development of subdivisions, which should render the Sales Contracts for lots in those subdivisions void for illegality.[85]

[111] Coastal Defendants seek dismissal of this Claim by arguing that the Sales Contracts at issue cannot be declared void for illegality based on the violation of a subdivision ordinance.[86]

[112] The North Carolina Supreme Court recognized that "the statutory imposition of a penalty, without more, will not invariably avoid a contract which contravenes a statute or ordinance when the agreement or contract is not immoral or criminal in itself." *Marriott Fin. Servs., Inc. v. Capitol Funds, Inc.*, 288 N.C. 122, 128

---

[85] *Id.* ¶¶ 546-57.
[86] Coastal Defs. Memo 29.

(1975). When making such a determination, the court may examine the language and purpose of the statute, as well as the effects of avoiding contracts in violation thereof. *Id.* In *Marriott*, the court held that a violation of a subdivision ordinance did not void the sale of property because legislative bodies generally do not intend to void a purchaser's contract where the owner fails to follow the provisions of the penal legislation. *Id.* at 135.

[113] After reviewing the ordinances for the Town of Sunset Beach and Brunswick County, the court concludes that Coastal Defendants' alleged violations of bonding requirements for Coastal Communities do not void the Sales Contracts for lots in those subdivisions. It appears the ordinances at issue were intended to punish, by way of penalty, for the violation of the ordinance itself. Similar to the rationale in *Marriott*, this court concludes that it cannot be reasoned that the Town of Sunset Beach or Brunswick County intended to invalidate Sales Contracts merely because Coastal Defendants violated an ordinance that requires bonding for subdivision development. *Id.* at 130.

[114] Accordingly, the court CONCLUDES that Plaintiffs' Claim to void the Sales Contracts fails to state a claim upon which relief can be granted against Coastal Defendants. Their Motion as to such Claim should be GRANTED, and the Claim should be DISMISSED.

7.

MLA Claim

[115] Plaintiffs' Complaint alleges that Coastal Defendants violated the MLA based on their involvement in the alleged scheme of predatory lending practices.

Plaintiffs' Claim alleges that a violation of the MLA gives rise to a private cause of action.

[116]   Coastal Defendants' Motion seeks dismissal of Plaintiffs' MLA Claim, based largely on the argument that the MLA does not provide a private cause of action to Plaintiffs.

[117]   After reviewing applicable case law, the court concludes that the MLA does not provide a private cause of action to plaintiffs, although it may create a duty sufficient to support a negligence claim.  *See In re Foreclosure of a Deed of Trust Executed by Bradburn*, 199 N.C. App. 549, 552-53 (2009) (concluding that the MLA provides limited remedies to the North Carolina Commissioner of Banks); *Guyton*, 199 N.C. App. at 48-49.

[118]   As a result, Plaintiffs' MLA Claim may not be pursued as an independent cause of action, but the duties that arise under the MLA may be incorporated within Plaintiffs' negligent misrepresentation Claim, as mentioned *supra*.

[119]   Accordingly, the court CONCLUDES that Plaintiffs' MLA Claim fails to state a claim upon which relief can be granted against Coastal Defendants.  Their Motion as to such Claim should be GRANTED, and the Claim should be DISMISSED.

8.

Limitations

[120]   Coastal Defendants contend that many of Plaintiffs' Claims are barred by the statute of limitations.

[121]   In response, Plaintiffs argue that their Claims are not time barred because equitable estoppel should apply to prevent Coastal Defendants from raising the statute

of limitations as a defense. Specifically, Plaintiffs allege that Coastal Defendants' initial representations regarding the completion of the Coastal Communities and the ongoing representations were designed to delay Plaintiffs' inquiry and forebear Plaintiffs from taking any legal action.[87] Based on these alleged, continued misrepresentations, Plaintiffs contend that Coastal Defendants should be equitably estopped from raising the statute of limitations as a defense in this civil action.

[122] At this preliminary stage in the proceedings, there exist factual questions regarding whether the doctrine of equitable estoppel may be utilized to overcome the statute of limitations on Plaintiffs' Claims. The court is unable to conclude, on the face of the Complaint, that Plaintiffs' Claims against Coastal Defendants are time barred by the statute of limitations. Accordingly, Coastal Defendants' Motion with regard to limitations should be DENIED.

IV.

CONCLUSION

NOW THEREFORE, based on the foregoing, it hereby is ORDERED that:

[123] Baxley Defendants' Motion is GRANTED and all Claims and Counterclaims asserted against Baxley Defendants are DISMISSED.

[124] Appraiser Defendants' Motion is GRANTED and all Claims and Counterclaims asserted against Appraiser Defendants are DISMISSED.

[125] Coastal Defendants' Motion is GRANTED as to Plaintiffs' Claims for Unjust Enrichment, Declaratory Judgment – Contracts Void for Illegality and Breach of North Carolina Mortgage Lending Act (N.C.G.S. § 53-243.01 et seq.).

---

[87] Compl. ¶¶ 686-91.

[126]   With respect to the *Anderson* Complaint, the following Claims asserted against Coastal Defendants are DISMISSED: Eleventh Claim, Fourteenth Claim and Twentieth Claim.

[127]   With respect to the *Beadnell* Complaint, the following Claims asserted against Coastal Defendants are DISMISSED: Eleventh Claim, Fourteenth Claim and Twentieth Claim.

[128]   With respect to the *Barton* Complaint, the following Claims asserted against Coastal Defendants are DISMISSED: Eleventh Claim, Fourteenth Claim and Twenty-First Claim.

[129]   With respect to the *Barry* Complaint, the following Claims asserted against Coastal Defendants are DISMISSED: Eleventh Claim and Nineteenth Claim.

[130]   With respect to the *Arnesen* Complaint, the following Claims asserted against Coastal Defendants are DISMISSED: Eleventh Claim and Nineteenth Claim.

[131]   With respect to the *Gilmartin* Counterclaim, the following Counterclaims asserted against Coastal Defendants are DISMISSED: Eleventh Counterclaim and Twentieth Counterclaim.

[132]   Except as granted herein, Coastal Defendants' Motion is DENIED.

[133]   On Tuesday, June 19, 2012, at 1:00 p.m., at the North Carolina Business Court, 225 Hillsborough Street, Suite 303, Raleigh, North Carolina, the court will conduct a hearing and status conference with all remaining parties to this action for the purpose of resolving case management issues going forward in this civil action.  On or before Monday, June 18, 2012, the parties shall submit a case management report,

pursuant to Rule 17 of the General Rules of Practice and Procedure for the North Carolina Business Court.

This the 30th day of May, 2012.