## WILLIAMS v. UNITED CMTY. BANK

[218 N.C. App. 361 (2012)]

JEROME E. WILLIAMS, JR., M.D., JEROME E. WILLIAMS, JR., M.D. CONSULTING
LLC, AND ADELLE A. WILLIAMS, M.D., PLAINTIFFS v. UNITED COMMUNITY BANK,
ET AL., DEFENDANTS

JEROME E. WILLIAMS, JR., M.D., JEROME E. WILLIAMS, JR., M.D. CONSULTING
LLC, AND ADELLE A. WILLIAMS, M.D., PLAINTIFFS v. ANTHONY R. PORTER, ET AL.,
DEFENDANTS

FIFTH THIRD BANK, PLAINTIFF v. SONJA Y. GORMAN, DEFENDANT AND THIRD-PARTY
PLAINTIFF v. ANTHONY R. PORTER, RANDY A. CARPENTER, ARNOLD GREG
ANDERSON, EDWARD BRENT ANDERSON, NEIL G. O'ROURKE, PEERLESS
REAL ESTATE SERVICES, INC., COMMUNITIES OF PENLAND, LLC, VILLAGE
OF PENLAND, LLC, AND COP LAND HOLDINGS, LLC, THIRD-PARTY DEFENDANTS

FIFTH THIRD BANK, PLAINTIFF v. KEVIN J. YOUNG, DEFENDANT AND THIRD-PARTY
PLAINTIFF v. ANTHONY R. PORTER, RANDY A. CARPENTER, ARNOLD GREG
ANDERSON, EDWARD BRENT ANDERSON, NEIL G. O'ROURKE, PEERLESS
REAL ESTATE SERVICES, INC., COMMUNITIES OF PENLAND, LLC, VILLAGE
OF PENLAND, LLC, AND COP LAND HOLDINGS, LLC, THIRD-PARTY DEFENDANTS

No. COA11-532

(Filed 7 February 2012)

**1. Appeal and Error—motion to amend record allowed—motion
to dismiss appeal denied**

The Williams plaintiffs' motion to amend the record on appeal
to include a file-stamped notice of appeal from the trial court's
summary judgment order was allowed and defendant's motion to
dismiss the Williams plaintiffs' purported appeal from the sum-
mary judgments was denied.

**2. Appeal and Error—interlocutory order—substantial right—
possibility of inconsistent verdicts**

The Court of Appeals addressed the merits of plaintiffs'
appeal from the trial court's interlocutory order granting sum-
mary judgment in favor of defendants as the order created the
possibility of separate trials involving the same issues which
could lead to inconsistent verdicts.

**3. Unfair Trade Practices—reliance—no forecast of evidence**

The trial court did not err in a case arising out of a failed land
development project by granting summary judgment in favor of
defendants on plaintiffs' unfair and deceptive trade practices
claims. Plaintiffs forecast no evidence that they actually relied on
the appraisals procured by defendants in deciding to make
their investments.

WILLIAMS v. UNITED CMTY. BANK

[218 N.C. App. 361 (2012)]

**4. Negligence—negligent misrepresentation—real property appraisals—reliance—no forecast of evidence**

The trial court did not err in a case arising out of a failed land development project by granting summary judgment in favor of defendants on plaintiffs' negligence and negligent misrepresentation claims. Plaintiffs failed to forecast evidence of reliance on the appraisals procured by defendants in deciding to make their investments.

**5. Conspiracy—civil—summary judgment on underlying tort claims proper**

The trial court did not err in a case arising out of a failed land development project by granting summary judgment in favor of defendants on plaintiffs' civil conspiracy claims. As summary judgment for defendants on the underlying tort claims was proper, plaintiffs' claim for civil conspiracy also failed.

**6. Costs—victorious party—summary judgment proper**

Plaintiffs' argument that the trial court erred in allowing costs to defendants in a case arising out of a failed land development project was overruled as the trial court did not err in granting summary judgment in favor of defendants.

**7. Evidence—exclusion of witness—no meaningful opportunity to depose**

The trial court did not abuse its discretion in a case arising out of a failed land development project by excluding an expert witness pursuant to Rule 37 of the Rules of Civil Procedure. Plaintiffs' failed to afford defendants a meaningful opportunity to depose their expert witness on his opinions of their appraisals, and the trial court's decision to exclude him as an expert witness did not reflect a lack of a reasoned decision.

Appeal by Plaintiffs Jerome E. Williams, Jr., M.D., Jerome E. Williams, Jr., M.D. Consulting LLC, and Adelle A. Williams, M.D., and Defendants and Third-Party Plaintiffs Sonja Y. Gorman and Kevin J. Young from judgments and orders entered 14 January 2011 and orders entered 10 February 2011 by Judge W. Robert Bell in Mecklenburg County Superior Court. Heard in the Court of Appeals 9 November 2011.

*Fuller & Barnes, LLP, by Trevor M. Fuller and Michael D. Barnes, for Plaintiffs Jerome E. Williams, Jr., M.D.; Jerome E. Williams, Jr., M.D. Consulting LLC; and Adelle A. Williams, M.D.; and Defendants and Third-Party Plaintiffs Sonja Y. Gorman and Kevin J. Young.*

*Young Moore and Henderson, P.A., by Walter E. Brock, Jr., and Patrick M. Aul, for Defendants Arnold Greg Anderson and Edward Brent Anderson.*

STEPHENS, Judge.

These appeals emanate from four cases, two of which were consolidated for trial and all four of which have been designated exceptional and assigned the secondary docket number 09 CVS 9191 for case management purposes. All of the cases arise from a scheme to develop land in the mountain community of Spruce Pine, which went badly awry. As the caption of this opinion suggests, this scheme and the resulting legal actions are complex and involve numerous parties. However, for purposes of the appeals addressed herein, the relevant cast of characters and procedural history are significantly more limited and the issues straightforward.

Pre-trial discovery has tended to show the following: In 2002, a group of developers purchased over 1,200 acres of land in Spruce Pine near the renowned Penland School of Crafts. They proposed a large residential community, divided the land into lots, and prepared marketing materials describing the project. After reviewing these materials, appellants Jerome E. Williams, Jr., M.D. ("Dr. Williams"); Jerome E. Williams, Jr., M.D. Consulting LLC; and Adelle A. Williams, M.D. (collectively, "the Williams Plaintiffs"), Sonja Y. Gorman ("Gorman") and her son, Kevin J. Young ("Young"), (collectively, all five appellants will be referred to as "Plaintiffs") became investors in the development in early 2006. Rather than paying cash for lots in the development to build on and hold for resale or paying cash to "buy into" the development as a whole, Plaintiffs were told they must purchase groups of lots by taking out bank loans. These loans would provide the developers with cash flow to finance the development. In turn, the developers promised to (1) provide Plaintiffs with money for the loan down payments, (2) repurchase the lots after two years, (3) cover Plaintiffs' interest payments until the repurchase, (4) pay Plaintiffs a premium or return equal to 125% of the value of the loans they took out, (5) pay all taxes, assessments, and other costs associ-

ated with the lots, and (6) personally guarantee the development's repurchase obligations. Essentially, the developers would use Plaintiffs' excellent credit and high net worth to secure bank loans to finance the development, and Plaintiffs would be compensated for providing this service.

On 17 January 2006, Young and Gorman jointly signed a purchase contract for lots 265-75. On 9 February 2006, Gorman signed a purchase contract for lots 276-79. Young also signed a purchase agreement for lots 280-84, but this purchase contract bears no signing date, although it does contain two fax time/date stamps, 8 February and 28 February 2006. In February 2006, Dr. Williams signed purchase contracts for lots 607-11. The purchase contract does not bear a signature date, but has a fax time/date stamp of 7 February 2006. Dr. Williams also purchased 15 additional lots in the development, but no purchase contracts for those lots appear in the record. In total, Dr. Williams agreed to pay $2.5 million for 20 lots, and Gorman and Young also agreed to purchase a total of 20 lots for $2.5 million.

Each purchase contract listed a price of $125,000 per lot. None of the contracts claimed that this price was based on an appraisal, required any appraisal, or made Plaintiffs' obligations to buy the lots contingent on the results of any appraisal. After the purchase contracts were signed, an employee of the developers was assigned to assist the Plaintiffs in obtaining bank loans to finance the purchases. Plaintiffs completed loan applications and returned them to this employee, who subsequently sent them to various banks. The banks, in turn, selected Defendants-Appellees Arnold Greg Anderson and Edward Brent Anderson (collectively, "the Andersons"), to appraise the lots. Brent Anderson appraised the Williams Plaintiffs' lots 596-606 on 27 January 2006 and Gorman's and Young's lots 265-75 on 1 February 2006. Greg Anderson appraised the Williams Plaintiff's lots 613-15 on 27 February 2006, the Williams Plaintiffs' lots 607-12 on 2 March 2006, Gorman's lots 276-79 on 7 March 2006, and Young's lots 280-84 on 15 March 2006. The Andersons appraised each lot at the same value, $125,000, which was also the exact price set forth in the purchase contracts Plaintiffs had previously signed. The loans were all approved and went forward.

In 2007, the development scheme collapsed because, *inter alia*, no sanitary district was ever approved by the relevant municipal authorities, and the lots had (and have) no municipal water and sewer services. The developers spent much of the money from the bank loans on personal items or to fund other failed development

projects. In the end, Plaintiffs were left in possession of the lots and responsible for the bank loans. County tax assessments place the value of the lots at approximately $20,000 or less in their current state.

On 4 April 2008 and 23 February 2009, the Williams Plaintiffs filed complaints in Mecklenburg County Superior Court against, *inter alia*, First Charter Bank,[1] now Fifth Third Bank ("the Bank"), and the Andersons, alleging claims of, *inter alia*, Unfair and Deceptive Trade Practices ("UDTP"), Fraud, Constructive Fraud, Aiding and Abetting Fraud, Fraud in the Inducement, Negligent Misrepresentation, Conversion, Negligence, Tortious Action in Concert and Civil Conspiracy, Breach of Fiduciary Duty, Breach of Contract, Breach of the Duty of Good Faith and Fair Dealing, Breach of Surety Agreement, and Violation of the Mortgage Lending Act (N.C. Gen. Stat. § 53-243.01 *et seq.*). The Bank replied, filing various counter-claims, and then filed actions against Gorman and Young, alleging that they defaulted on promissory notes, committed fraud against the Bank, and engaged in UDTP against the Bank. Gorman and Young answered and filed various counterclaims against the Bank, and then, on 31 March and 7 April 2009, commenced a third-party action against the Andersons, alleging, *inter alia*, claims of UDTP.

The Andersons moved to dismiss Plaintiffs' claims against them. The trial court granted the motion as to the Williams Plaintiffs' claims for Aiding and Abetting Fraud, Conversion, Breach of Fiduciary Duty, Breach of Surety Agreement, and Violation of the Mortgage Lending Act, and as to all of Gorman's and Young's claims except those for UDTP. Thereafter, Gorman and Young appealed from several trial court orders regarding depositions and sanctions, which this Court dismissed in a pair of unpublished opinions. *See In re Fifth Third Bank*, ___ N.C. App. ___, ___ S.E.2d ___ (2011) (COA10-596); *In re Fifth Third Bank*, ___ N.C. App. ___, ___ S.E.2d ___ (2011) (COA10-1233).

While those appeals were pending, the Bank filed motions for summary judgment with respect to the claims asserted by Plaintiffs and its own claim based on promissory notes executed by Plaintiffs. On 5 October 2010, the court granted the Bank's motions, and Plaintiffs appealed. Gorman and Young settled with the Bank and

---

1. Plaintiffs initially filed suit against First Charter Bank, from whom they obtained the loans for the development. After First Charter was acquired by Fifth Third Bank, Fifth Third was substituted for First Charter as the named defendant in this case.

withdrew their appeal. In an opinion filed 6 December 2011, this Court affirmed summary judgment in favor of the Bank against the Williams Plaintiffs. *In re Fifth Third Bank*, ___ N.C. App. ___, ___ S.E.2d ___ (2011) (COA11-310).

Also on 23 April 2010, the Andersons moved for summary judgment, seeking dismissal of all of Plaintiffs' remaining claims against them. The Andersons also filed a motion to exclude expert witness testimony from real estate appraiser John Capewell, Jr., as to the claims of Gorman and Young. Following a hearing, on 14 January 2011, the trial court entered orders excluding testimony from Capewell and granting summary judgment in favor of the Andersons and against Plaintiffs. On 2 February 2011, the Andersons filed verified bills of costs, and on 10 February 2011, the court entered orders allowing them. From these summary judgments and orders, Plaintiffs appeal.

## Discussion

On appeal, Plaintiffs argue that the trial court erred in granting summary judgment to the Andersons on their UDTP claims. The Williams Plaintiffs also argue that the trial court erred in granting summary judgment to the Andersons on their negligence, negligent misrepresentation, and civil conspiracy claims. Plaintiffs further argue that the trial court abused its discretion in allowing the Andersons' verified bills of costs. Gorman and Young argue that the trial court abused its discretion in excluding evidence under Rule 37. We affirm.

## The Andersons' Motion to Dismiss

[1] By motion filed 19 October 2011, the Andersons seek dismissal of the Williams Plaintiffs' purported appeal from the summary judgments entered in the trial court for failure to include a file-stamped notice of appeal from those judgments. "[A] default precluding appellate review on the merits necessarily arises when the appealing party fails to complete all of the steps necessary to vest jurisdiction in the appellate court. It is axiomatic that courts of law must have their power properly invoked by an interested party." *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 197, 657 S.E.2d 361, 364 (2008). "Without proper notice of appeal, this Court acquires no jurisdiction." *Brooks v. Gooden*, 69 N.C. App. 701, 707, 318 S.E.2d 348, 352 (1984) (citations omitted).

The original record on appeal reveals a single notice of appeal from the Williams Plaintiffs, giving notice of appeal from the 10

February 2011 order allowing the Andersons' verified bills of costs. The original record on appeal contained no notice of appeal from the Williams Plaintiffs as to the 14 January 2011 summary judgment in favor of the Andersons.[2] However, on 2 November 2011,[3] the Williams Plaintiffs moved to amend the record on appeal pursuant to Rules 9(b)(5) and 37 of the North Carolina Rules of Appellate Procedure. We allow the Williams' Plaintiffs' motion to amend the record on appeal to include the notice of appeal from the Williams Plaintiffs as to the 14 January 2011 summary judgment in favor of the Andersons, which we note was properly and timely filed and served on the Andersons on 11 February 2011. In turn, we deny the Andersons' motion to dismiss and reach the merits of this appeal.

*Grounds for Appellate Review*

**[2]** This appeal is interlocutory because

> the trial court's order[s and judgments did] not dispose of the case, but [left] it for further action by the trial court in order to settle and determine the entire controversy. An interlocutory order is immediately appealable if the trial court certifies that: (1) the order represents a final judgment as to one or more claims in a multiple claim lawsuit or one or more parties in a multi-party lawsuit, and (2) there is no just reason to delay the appeal, [as certified pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b)] . . . . Absent a Rule 54(b) certification, an interlocutory order may be reviewed if it will injuriously affect a substantial right unless corrected before entry of a final judgment.

*Hamby v. Profile Prods., L.L.C.*, 361 N.C. 630, 633-34, 652 S.E.2d 231, 233-34 (2007) (citation omitted). As noted *supra*, the claims against the Andersons and the various other parties to the underlying cases all arise from the same complex land development scheme. Our Supreme Court has held "that a substantial right is affected [where, as here,] the trial court's order granting summary judgment to some, but not all, [of the] defendants creates the possibility of separate trials involving the same issues which could lead to inconsistent verdicts." *Id.* at 634, 652 S.E.2d at 234. Accordingly, we address the merits of Plaintiffs' appeal.

---

2. The record does contain proper notices of appeal from Gorman and Young.

3. On the same date, counsel for the Williams Plaintiffs also moved for leave to file opposition to the Andersons' motion to dismiss out of time, acknowledging that such opposition was due one day earlier (on 1 November 2011) by operation of Rules 27(b) and 37(a) of the North Carolina Rules of Appellate Procedure. We allow this motion.

### *UDTP Claims*

**[3]** Plaintiffs argue that the trial court erred in granting summary judgment to the Andersons on Plaintiffs' UDTP claims. We disagree.

"We review a trial court's summary judgment rulings *de novo.*" *Odell v. Legal Bucks, LLC*, 192 N.C. App. 298, 307, 665 S.E.2d 767, 773 (2008) (citation omitted), *disc. review denied*, 363 N.C. 258, 676 S.E.2d 905 (2009). Summary judgment is proper only

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.

N.C. Gen. Stat. § 1A-1, Rule 56(c) (2009).

It is well established that

> [a] claim for unfair and deceptive trade practices under N.C. Gen. Stat. § 75.1-1 must allege that: (1) the defendant committed an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff or to the plaintiff's business. Where an unfair or deceptive practice claim is based upon an alleged misrepresentation by the defendant, the plaintiff must show actual reliance on the alleged misrepresentation in order to establish that the alleged misrepresentation proximately caused the injury of which plaintiff complains.

*Sunset Beach Dev., LLC v. Amec, Inc.*, 196 N.C. App. 202, 211, 675 S.E.2d 46, 53 (2009) (internal citation, quotation marks and brackets omitted). "Actual reliance is demonstrated by evidence [the] plaintiff acted or refrained from acting in a certain manner due to [the] defendant's representations." *Pleasant Valley Promenade v. Lechmere, Inc.*, 120 N.C. App. 650, 663, 464 S.E.2d 47, 57 (1995) (citation omitted). Where a plaintiff cannot forecast evidence of actual reliance, summary judgment for the defendants is proper. *Sunset Beach Dev., LLC*, 196 N.C. App. at 212, 675 S.E.2d at 54.

Although Plaintiffs claim that, "[i]f the Andersons had disclosed any of the flaws in their appraisal reports or if the Borrowers knew that the lots were overvalued," they would not have invested and subsequently lost money, their own admissions and the facts in the record belie this assertion. Plaintiffs' complaints state that they "had

WILLIAMS v. UNITED CMTY. BANK

[218 N.C. App. 361 (2012)]

no knowledge of, contact with, nor control over the appraisal process[,]" which was instead "controlled by [the developers] and the banks." Plaintiffs acknowledge that they did not see any of the appraisals prior to signing the purchase contracts, which in any event, were not contingent on the appraised values for the lots. In deposition testimony, Dr. Williams was asked whether the Andersons made any verbal or written misrepresentations to him about the lots, and he responded, "Not to my knowledge, no, prior to closing." His wife also testified that the appraisal reports had not played any role in her decision to purchase the lots. Young testified that he had not even seen the appraisals as of the date of his deposition, years after his purchase of the lots. Likewise, Gorman could not recall relying on any information beyond the marketing and other materials provided by the developers.

Further, Young and Gorman signed the purchase contract for lots 265-75 on 17 January 2006 and Brent Anderson did not appraise those lots until 1 February 2006. Gorman signed the purchase contract for lots 276-79 on 9 February 2006 and Greg Anderson did not appraise those lots until 7 March 2006. Young appears to have signed the purchase agreement for lots 280-84 in February 2006, but they were not appraised until 15 March 2006. In addition, Dr. Williams signed the purchase contract for lots 607-12 in February 2006, but no appraisals were conducted on those lots until 2 March 2006. The purchase contracts for lots 596-606 and 613-15 are not contained in the record. Thus, Dr. Williams was committed to purchase at least six of his 20 lots and Young and Gorman were committed to purchase all 20 of their lots at a price of $125,000 each *before any appraisals had been conducted*.

All of the evidence shows that Plaintiffs made their decisions to invest in the development and contracted to do so without any awareness of, much less reliance on, the Andersons' appraisals. Even had the Andersons appraised the lots differently, Plaintiffs would still have been obligated to purchase them at the prices agreed to in the purchase contracts. Plaintiffs cannot have relied on information they did not see and did not know existed (some of which did not, in fact, yet exist) at the time of their decisions. Because Plaintiffs forecast no evidence that they actually relied on the appraisals in deciding to make their investments, the trial court properly granted summary judgment to the Andersons. Accordingly, we affirm.

.

*Negligence Claims*

**[4]** The Williams Plaintiffs argue that the trial court erred in granting summary judgment to the Andersons on their negligence and negligent misrepresentation claims. We disagree.

In *Ballance v. Rinehart*, we considered "whether a licensed real estate appraiser who performs an appraisal of real property at the request of a client owes a prospective purchaser of such property *who relies on the appraisal* a duty to use reasonable care in the preparation of the appraisal." 105 N.C. App. 203, 205, 412 S.E.2d 106, 107 (1992) (emphasis added). We expressly adopted the approach for determining negligence by accountants as set forth by our Supreme Court in *Raritan River Steel Co. v. Cherry, Bekaert & Holland,* 322 N.C. 200, 201, 367 S.E.2d 609, 610 (1988). *Raritan,* in turn, relied on the following language from the Restatement (Second) of Torts:

> Information Negligently Supplied for the Guidance of Others.
>
> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to *liability for pecuniary loss caused to them by their justifiable reliance upon the information,* if he fails to exercise reasonable care or competence in obtaining or communicating the information.
>
> (2) . . . [T]he liability stated in Subsection (1) is limited to loss suffered
>
> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
>
> (b) *through reliance upon it in a transaction* that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

*Ballance,* 105 N.C. App. at 206-07, 412 S.E.2d at 108 (emphasis added) (quoting Restatement (Second) of Torts § 552 (1977)). Thus, just as is the case with UDTP claims, plaintiffs asserting negligence claims against appraisers must forecast evidence of reliance in order to establish a *prima facie* case of negligence and negligent misrepresentation and survive a motion for summary judgment.

**WILLIAMS v. UNITED CMTY. BANK**

[218 N.C. App. 361 (2012)]

Here, as discussed above, the Williams Plaintiffs cannot show that they relied on the Andersons' appraisals in making their investment decisions, where they signed the purchase contracts without reviewing appraisals and before at least some of the appraisals were even performed. The Williams Plaintiffs having failed to forecast evidence of reliance on the appraisals, the trial court's grant of summary judgment to the Andersons was proper. Accordingly, we affirm.

### Civil Conspiracy Claims

**[5]** The Williams Plaintiffs argue that the trial court erred in granting summary judgment in favor of the Andersons on the civil conspiracy claims. We disagree.

> It is well established that there is not a separate civil action for civil conspiracy in North Carolina. Instead, civil conspiracy is premised on the underlying act. Where this Court has found summary judgment for the defendants on the underlying tort claims to be proper, we have held that a plaintiff's claim for civil conspiracy must also fail.

*Piraino Bros., LLC v. Atl. Fin. Group, Inc.*, ___ N.C. App. ___, ___, 712 S.E.2d 328, 333-34 (2011) (internal citations and quotation marks omitted). Thus, because we affirm summary judgment for the Andersons on their underlying tort claims, we also affirm the trial court's summary judgment order as to the Williams' Plaintiffs' civil conspiracy claims.

### Allowance of Costs

**[6]** "North Carolina General Statutes, section 6.1 establishes the general rule that costs may be allowed to the party in favor of whom judgment has been awarded." *Cail v. Cerwin*, 185 N.C. App. 176, 187, 648 S.E.2d 510, 517 (2007) (citation omitted). Plaintiffs premise their contention that the trial court erred in allowing costs to the Andersons on their assertion that the court erred in its grant of summary judgment. Having affirmed summary judgment for the Andersons, we overrule Plaintiffs' argument regarding allowance of costs.

### Rule 37 Order

**[7]** Young and Gorman argue that the trial court abused its discretion in excluding an expert witness pursuant to Rule 37. We disagree.

"Rule 26 [of the North Carolina Rules of Civil Procedure] embodies the general provisions relating to all of the discovery rules." *Bumgarner v. Reneau*, 332 N.C. 624, 629, 422 S.E.2d 686, 689 (1992)

(citing N.C. Gen. Stat. § 1A-1, Rule 26(e)(2) (1990)). "The trial court not only has the inherent authority to regulate trial proceedings [pursuant to Rule 26], but it has the express authority under Rule 37, to impose sanctions on a party who balks at discovery requests." *Id.* at 630, 422 S.E.2d at 689 (citation and quotation marks omitted). "If a party . . . fails to obey an order to provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just, . . . among others . . . an order . . . prohibiting [the disobedient party] from introducing designated matters in evidence . . . ." N.C. Gen. Stat. § 1A-1, Rule 37(b)(2)(b) (2009).

> The imposition of sanctions under Rule 37 is in the sound discretion of the trial judge and cannot be overturned absent a showing of abuse of that discretion. An abuse of discretion may arise if there is no record evidence which indicates that [the disobedient party] acted improperly, or if the law will not support the conclusion that a discovery violation has occurred.

*In re Pedestrian Walkway Failure*, 173 N.C. App. 237, 246, 618 S.E.2d 796, 803 (2005) (citation omitted).

Here, Case Management Order No. 2 directed Plaintiffs to identify their expert witnesses on or before 15 August 2009, and stated that any witnesses not identified in accordance with the order "shall not be permitted to testify at trial absent a showing of good cause." The order also required disclosure of the subject matter, facts, and opinions to which the expert was expected to testify and a summary of the grounds for each opinion pursuant to Rule 26. Plaintiffs purported to disclose the opinion of proposed expert witness Capewell on 20 August 2009, and the Andersons moved to exclude Capewell due to Plaintiffs' untimely disclosure. Plaintiffs then moved to amend the case management order to extend the time for them to disclose their expert witnesses until 2 October 2009, and the trial court granted this motion. Plaintiffs then purported to disclose Capewell and his opinions on 2 October 2009. Specifically, Plaintiffs stated that Capewell would review the Andersons' appraisals and other evidence in the case and opine that the Andersons violated the applicable standard of care for real-estate appraisals and made fraudulent appraisals.

However, when the Andersons deposed him on 14 January 2010, Capewell stated that he had not yet reviewed the Andersons' appraisals of any of the lots. This admission indicates that Plaintiffs' 2 October 2009 disclosure regarding Capewell was untrue; Capewell still not having reviewed the relevant evidence in January 2010,

Plaintiffs can hardly have "disclosed" Capewell's opinions and the basis therefor months earlier in October 2009. More significantly, Capewell's failure to have reviewed the appraisals and formed opinions of them rendered Capewell's deposition a waste of time for the Andersons.

In response to the Andersons' 23 April 2010 motion for summary judgment, Gorman and Young submitted an expert report dated 14 February 2010 and an affidavit from Capewell. The Andersons then moved to exclude Capewell pursuant to Rules 26 and 37, which motion the trial court granted on 14 January 2011. In light of Plaintiffs' failure to afford the Andersons a meaningful opportunity to depose Capewell on his opinions of their appraisals, the trial court's decision to exclude him as an expert witness does not reflect a lack of a reasoned decision. The trial court did not abuse its discretion, and accordingly, we affirm.

AFFIRMED.

Judges BRYANT and ELMORE concur.