Abraham v. Jauregui, 2012 NCBC 35.

STATE OF NORTH CAROLINA          IN THE GENERAL COURT OF JUSTICE
                                             SUPERIOR COURT DIVISION
COUNTY OF ONSLOW                                09 CVS 3608

STEVEN ABRAHAM, JOSEPH AND DEBRA )
ALEXANDER, EVAN AND DONNA )
ALLSEITZ, JOHN BACK AND MAUREEN )
CARY-BACK, JEANNE AND RANDALL )
BALDERSON, DAVID BAYS, RENEE )
BEERMAN, MARY AND RICHARD )
BLESSING, TERRENCE AND PATRICE )
BROWN, GEORGE AND GWENDOLYN )
BURNS, KRISTIN AND HON CHAN AND )
OTHELLO WILLIAMS, CHARLES DAVID )
AND KATE CLARK, GAIL C. AND MAURICE )
CLARKE, DANIEL B. COLE, LISA AND )
JOSEPH CONWAY, BRYAN CURTIS, )
TERRY DAWKINS AND RHONDA BROOKS,)
MARY AND THOMAS DAVIS, KRISTEN )
DIVINEY, CHERYL AND CHRIS DOLAN, )
ANDREW M. AND KAREN DUGGAN, )
CHRISTIAN A. AND AMY DUX, MOHAMED )
A. AND CHRISTINE ELANSARY, DOUGLAS )
AND ALICIA EWELL, BETH A. FEELEY, )
MARY AND MATTHEW FREDERICK, )
STACEY FREED AND THOMAS ERBLAND, )
JOHN AND KRISTEN FULCHER, JASON )
AND PAULA VANN FULTON, KENNETH A. )
AND ERIN GAUDREAULT, RANDY )
HALVERSON, CRAIG B. HANFORD, JOHN )
HILL, DEBRA J. AND DAVID HOY, )
FREDERICK AND LAURA HUNTER, )
BASHEER AND KIM ILYAS, ELISABETH J. )
AND DAVID JACKSON, KEVIN KEETON )
ROBERT KERR, SHIRLEY KING, MICHAEL )
AND KRISTI LALLI, EDWARD AND KAREN )
LEWIS, EDWARD M. AND JAMIE )
MAHONEY, ALAN AND LORRIE )
MCCULLOCK, GREG MILLER, SEAN )
MYKIETYN, ABE AND DEBORAH NADER, )
BONNIE O'HEARN, PEGGY L. AND )
ANTHONY PAPER, JAY PATEL, SANFORD )
J. PAYNE, CYRESA AND REGINALD )

                                      **OPINION AND ORDER**
                                  **ON MOTION TO DISMISS**

PERKINS, CHRISTIAN PERNELL, JOSEPH )
POZDA, JOHN P. AND MERRIE J. PRICE, )
JON AND NATALIE DIANE RARDIN, )
SHERRYL AND DONALD SALZMAN, NEIL )
SEITZ, JOSEPH AND KERRIE SHEAFFER, )
DALLAS AND NANCY SIMONS, GARY AND )
KAREN SMERDZINSKI, JAMES AND )
REBECCA SMITH, LEE SPRUELL, )
THOMAS STEWART, NINA SUMMERS, )
JEFFREY THOMAS, JOSEPH R. AND )
DONNA THOMPSON, EDWARD AND )
KATHY TIERNAN, KATHLEEN AND )
ALBERT TUTEM, MICHELLE TUTEM, TOM )
AND MARTHA VERBANIC, HOU WANG, )
JAMES WHITEHEAD, LESLIE WILLIAMS )
And AUDREY AND CURTIS )
WITHERSPOON, )
                 Plaintiffs )
                  )
         v. )
                  )
JOSEPH JAUREGUI; THE JAUREGUI LAW )
FIRM, PLLC; BRAD WATSON; WATSON )
AND ROBINSON, LLP; TRACY ROBINSON; )
CARLOS WATSON; JOHN TODD d/b/a )
JOHN TODD APPRAISAL SERVICES; )
DALE BEST REALTY & APPRAISAL )
SERVICE, INC.; BERTHADALE BEST; )
EMILY ADAMS d/b/a ADAMS APPRAISALS )
and HOMEFOCUS SERVICES, LLC, )
                 Defendants )

THIS CAUSE, designated a mandatory complex business case by Order of the

Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-

45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."),

and assigned to the undersigned Chief Special Superior Court Judge for Complex

Business Cases, now comes before the court upon Defendants Berthadale Best and

Dale Best Realty & Appraisal Service, Inc.'s Motion to Dismiss Pursuant to Rule

12(b)(6) of the North Carolina Rules of Civil Procedure ("Motion"); and

THE COURT, after considering the Motion, briefs and arguments in support of and opposition to the Motion, other submissions of counsel and appropriate matters of record, CONCLUDES that the Motion should be GRANTED, for the reasons stated herein.

> *Shipman & Wright, LLP, by William G. Wright, Esq., Gary K. Shipman, Esq., Matthew W. Buckmiller, Esq. and James T. Moore, Jr., Esq. for Plaintiffs.*

> *Hedrick Gardner Kincheloe & Garofalo LLP, by Luke P. Sbarra, Esq. for Defendants Dale Best Realty Appraisal, Inc. and Berthadale Best.*

Jolly, Judge.

I.

<u>PROCEDURAL HISTORY</u>

[1]     On September 11, 2009, Plaintiffs filed their original Complaint, which alleged claims for relief ("Claims") against some twenty-five Defendants.  On February 24, 2010, the court granted Plaintiffs' Motion for Leave to Amend the Complaint.  On April 30, 2010, Plaintiffs filed their Amended Complaint ("Amended Complaint"), which alleges Claims against only the captioned Defendants.

[2]     Plaintiffs' Amended Complaint alleges thirteen Claims against various Defendants: First Claim – Unfair and Deceptive Trade Practices Act against Defendant HomeFocus Services, LLC ("HomeFocus");  Second Claim – Negligent Misrepresentation against HomeFocus; Third Claim –  Fraud against HomeFocus; Fourth Claim – Negligence against HomeFocus; Fifth Claim – Unfair and Deceptive Trade Practices against John Todd d/b/a John Todd Appraisal Services ("Todd"), Emily Adams d/b/a Adams Appraisals ("Adams"), Berthadale Best ("Best") and Dale Best Realty & Appraisal Service, Inc. ("Dale Best Realty") (Todd, Adams, Best and Dale Best

Realty collectively, "Appraiser Defendants"); Sixth Claim – Negligent Misrepresentation against Appraiser Defendants; Seventh Claim – Fraud against Appraiser Defendants; Eighth Claim – (in the alternative) Negligence against Appraiser Defendants; Ninth Claim – Breach of Fiduciary Duty against the Jauregui Law Firm, PLLC ("Jauregui Law"), Joseph Jauregui ("Jauregui") and Brad Watson; Tenth Claim – Negligence/Legal Malpractice against Jauregui Law, Jauregui and Brad Watson; Eleventh Claim – Breach of Fiduciary Duty against Watson and Robinson, LLP ("W&R LLP"), Carlos Watson and Tracy Robinson ("Robinson") (W&R LLP, Carl Watson and Robinson collectively, "Watson Defendants"); Twelfth Claim – Negligence/Legal Malpractice against Watson Defendants and Thirteenth Claim – Punitive Damages against all Defendants.[1]

[3]     On November 12, 2009, Best and Dale Best Realty (collectively, "Best Appraisers") filed the Motion, seeking to dismiss Plaintiffs' Sixth Claim (Negligent Misrepresentation), Seventh Claim (Fraud) and Thirteenth Claim (Punitive Damages) as to Best Appraisers.[2] The Motion does not address the Fifth Claim (Unfair and Deceptive Trade Practices) or the Eighth Claim (Negligence) as to Best Appraisers.

[4]     At the time the Motion was filed, a related suit against Bank of America, N.A. ("BOA"),[3] which involved claims similar to the Claims in this action, was pending in federal court in the Eastern District of Virginia. *See Feeley v. Total Realty Mgmt.*, 660 F. Supp. 2d 700 (E.D. Va. 2009) ("Virginia Action"). In the interest of justice and judicial economy, this court entered an Order on March 14, 2011, staying any ruling on the

---

[1] The Claim for Punitive Damage is not styled as "Thirteenth Claim" in Plaintiffs' Amended Complaint. However, the court will refer to said claim as the Thirteenth Claim for purposes of this Opinion and Order.
[2] The Motion initially was filed in response to Plaintiffs' original Complaint. Upon granting Plaintiffs' Motion for Leave to Amend the Complaint by an Order dated February 24, 2010, the court deemed the Motion and all briefs to have been filed in response to the Amended Complaint.
[3] Plaintiffs' Claims in the instant case brought against HomeFocus are similar to the claims asserted by the plaintiffs in the Virginia Action against BOA. The Virginia Action is further related to the instant case in that HomeFocus apparently is a wholly-owned subsidiary of BOA.

Motion, pending a ruling by the court in the Virginia Action on BOA's motion to dismiss. Sometime in late 2011, BOA reached a settlement with the plaintiffs in the Virginia Action.[4]

[5]    The Motion has been fully briefed and argued and is ripe for determination.

## II.

## FACTUAL BACKGROUND

[6]    Paragraphs 7 through 27 below reflect the substance of the allegations of the Amended Complaint.

## A.

## Parties

[7]    Plaintiffs who have Claims against Best Appraisers as reflected in the Amended Complaint are Debra and Joseph Alexander; Evan and Donna Allseitz; Kristin and Hon Chan; Othello Williams; Gail and Maurice Clarke; Joseph and Lisa Conway; Thomas and Mary Davis; Edward and Karen Duggan; Christian and Amy Dux; John and Kristin Fulcher; Jason Fulton and Paula Vann Fulton; Randy Halverson; Basheer and Kim Ilyas; Robert Kerr; Edward and Karen Lewis; Edward and Jamie Mahoney; Greg Miller; Sean Mykietyn; Jon and Natalie Rardin; Dallas and Nancy Simons; James and

---

[4] Since filing the Amended Complaint, Plaintiffs have voluntarily dismissed, with prejudice, the Claims alleged against Defendants HomeFocus, Jauregui Law, Jauregui, Brad Watson, Todd and Adams.

Rebecca Smith;[5] Thomas Stewart; Joseph and Donna Thompson; Edward and Kathy Tiernan and Thomas and Martha Verbanic (collectively, "Plaintiffs").[6]

[8]     Plaintiffs are residents of Maryland, Ohio, South Carolina and Virginia and purchased properties in eastern North Carolina from Total Realty Management, LLC ("TRM").

[9]     HomeFocus is an independent appraisal management company that ordered appraisals for Plaintiffs' lots financed by BOA.[7]  HomeFocus is also a wholly-owned subsidiary of BOA.[8]

[10]     At all times relevant, Best was a licensed appraiser in the State of North Carolina[9] and acted as the agent or employee of Dale Best Realty.[10]

[11]     Dale Best Realty, also doing business as Dale Best Appraisal Service, Inc., is a corporation organized and existing under the laws of the State of North Carolina.[11]

---

[5] On May 3, 2010, Rebecca Smith died.  Upon motion by Plaintiff James Smith, Rebecca Smith's surviving spouse and administrator of her estate, the court entered an Order on September 29, 2010, substituting James Smith as the claimant on behalf of Rebecca Smith for all matters related to this litigation.

[6] *See*, *e.g.*, Am. Compl. ¶ 121, Ex. 1.  The court notes that John and Merrie Price are not listed in the group of Plaintiffs identified as the "HomeFocus/Best Plaintiffs." *Id.* ¶ 121.  They are referred to, however, in paragraph 151 of the Amended Complaint as an example of HomeFocus' alleged steering of appraisals.  They are also referred to in paragraph 200 of the Amended Complaint, a paragraph located in a section of the Amended Complaint entitled "Appraisals Provided By Berthadale Best."  Based on these allegations, the court concludes that John and Merrie Price are included as Plaintiffs in this analysis.

[7] *Id.* ¶ 88.

[8] *Id.* ¶ 114.

[9] Best surrendered her North Carolina appraiser's license in connection with an investigation by the North Carolina Appraisal Board of her appraisal activities, including her appraisals of lots in Summerhouse. *Id.* ¶ 105.

[10] *Id.* ¶ 85.

[11] *Id.* ¶ 84.

B.

The Alleged Scheme

[12]    In 2006 and 2007, TRM operated a scheme of purchasing and immediately reselling many millions of dollars worth of unimproved real estate in Summerhouse on Everett Bay ("Summerhouse"), a residential development in Onslow County, North Carolina, and in Cannonsgate at Bogue Sound ("Cannonsgate"), a residential development in Carteret County, North Carolina.[12]

[13]    On the same day TRM purchased the unimproved real estate, it resold some of the property (portions of which are referred to as "lots" herein) to Plaintiffs and others for approximately twice the price TRM paid.[13]

[14]    Summerhouse was a planned subdivision expected to have over 1,000 lots.  TRM sold approximately 250 lots in Summerhouse, leaving approximately 700 lots for the developer, RA North Development I, Inc. ("RA North"), to sell directly to individual purchasers.[14]

[15]    Defendants, individually and in concert with TRM, implemented and participated in TRM's alleged scheme.[15]  Defendants profited from their participation in TRM's alleged scheme.[16]  Appraiser Defendants, including Best Appraisers, earned an appraisal fee for each lot appraised.[17]

[16]    HomeFocus manipulated the appraisal process by ordering two appraisals for lots Plaintiffs purchase in Summerhouse.[18]  Specifically, HomeFocus obtained initial

---

[12] *Id.* ¶ 89.
[13] *Id.* ¶ 90.
[14] *Id.*
[15] *Id.* ¶ 92.
[16] *Id.* ¶ 93.
[17] *Id.* ¶ 94.
[18] *Id.* ¶¶ 120-22.

appraisals for Plaintiffs' loans ("First Appraisals").[19] HomeFocus maintained a list of appraisers and rotated through the list in obtaining the First Appraisals.[20] The First Appraisals reflected values far less than what was required to support BOA's loans and far less than the price paid by Plaintiffs.[21]

[17] Disappointed with the First Appraisals, HomeFocus contacted Best and requested that she perform second appraisals ("Second Appraisals") on the lots.[22]

[18] HomeFocus provided Best certain comparables, including HUD-1s for other sales in Summerhouse, to use in preparing her appraisals.[23] The specific comparables provided by HomeFocus exaggerated the actual value of the lots.[24]

[19] HomeFocus instructed Best to use specific comparable appraisals so that the lots TRM contracted to sell to Plaintiffs could qualify for the unique financing BOA provided.[25]

[20] Best prepared the appraisals on behalf of HomeFocus for the lots purchased by Plaintiffs.[26] Best used previously settled TRM sales contracts and HUD-1s to inflate the appraised value for the lots.[27]

[21] At the same time, Summerhouse lots in close proximity to the lots appraised by Best were being sold by RA North to other buyers from $140,000 to $200,000.[28]

---

[19] *Id.* ¶ 123.
[20] *Id.* ¶ 124.
[21] *Id.* ¶ 125.
[22] *Id.* ¶ 128.
[23] *Id.* ¶ 133.
[24] *Id.* ¶ 134.
[25] *Id.* ¶ 160.
[26] *Id.* ¶ 100.
[27] *Id.*
[28] *Id.* ¶ 164.

[22]    For each Second Appraisal, Best failed to include the Summerhouse lots sold by RA North for approximately half the price paid by Plaintiffs.[29]  When Best did use an RA North sale, she chose larger, waterfront lots, which were not comparable to the lots being appraised.[30]

[23]    For each Second Appraisal, Best knew that the lots she used as comparables had transferred on the same day for a lower price.[31]  Best selected only the higher priced sales that would support the contract price and the loan obligations incurred by Plaintiffs.[32]  In doing so, Best did not ascertain the true value of the lots she appraised.[33]

[24]    Best completed and provided each of the Second Appraisals either the same day she received the appraisal request or at most, two days after she received the appraisal request.[34]  Best knew that Summerhouse did not contain any completed homes at the time she performed appraisals.[35]  As such, Best knew she was only appraising the value of undeveloped real estate.[36]  However, in some of her Second Appraisals, Best stated that Summerhouse was 50% vacant.[37]  In other Second Appraisals, Best stated that Summerhouse was only 30% vacant.[38]

[25]    In her Second Appraisals, Best repeatedly stated that the single-family houses in Summerhouse were ages new to fifty-five years old, with a predominant age

---

[29] *Id.* ¶ 165.
[30] *Id.* ¶ 166.
[31] *Id.* ¶ 167.
[32] *Id.*
[33] *Id.* ¶ 169.
[34] *Id.* ¶ 173.
[35] *Id.* ¶ 175.
[36] *Id.* ¶ 181.
[37] *Id.* ¶ 176.
[38] *Id.*

of fifteen years old.[39]  At the time Best made those statements in the Second Appraisals, she knew they were false and misleading because there were no houses constructed in Summerhouse.[40]

[26]    Each of Best's Second Appraisals appraised the lots from $80,000 to $200,000 more than the First Appraisal.[41]  Moreover, Best's Second Appraisals all occurred within six days to two months from the time the First Appraisals occurred.[42]

[27]    To obtain financing, HomeFocus repeatedly submitted to BOA the Second Appraisals performed by Best.[43]

III.

DISCUSSION

A.

Legal Standard

[28]    The Motion seeks dismissal of three Claims asserted against Best Appraisers, pursuant to Rule 12(b)(6), North Carolina Rules of Civil Procedure ("Rule(s)"), which is appropriate when a complaint fails to state a claim upon which relief can be granted.

[29]    When deciding a Rule 12(b)(6) motion, the well-pleaded allegations of the complaint are taken as true and admitted, but conclusions of law or unwarranted deductions of facts are not admitted.  *Sutton v. Duke*, 277 N.C. 94, 98 (1970).

[30]    A complaint fails to state a claim upon which relief can be granted when either (a) the complaint on its face reveals that no law supports the plaintiff's claim; (b)

---

[39] *Id.* ¶ 182.
[40] *Id.* ¶ 183.
[41] *Id.* ¶ 129.
[42] *Id.* ¶ 130.
[43] *Id.* ¶ 131.

the complaint on its face reveals the absence of facts sufficient to make a good claim or (c) some fact disclosed in the complaint necessarily defeats the plaintiff's claim. *Jackson v. Bumgardner*, 318 N.C. 172, 175 (1986). However, a complaint should not be dismissed for failure to state a claim upon which relief can be granted unless it (a) does not give sufficient notice to the defendant of the nature and basis of the plaintiff's claim or (b) appears beyond a reasonable doubt that the plaintiff could not prove any set of facts in support of his claim that would entitle him to relief. *Sutton*, 277 N.C. at 108.

[31]    When deciding a Rule 12(b)(6) motion, the court may consider documents attached as exhibits or otherwise referred to in the complaint, without converting the motion into one for summary judgment. *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60-61 (2001).

B.

The Motion

[32]    The Motion is directed at Plaintiffs' Claims against Best Appraisers for negligent misrepresentation, fraud and punitive damages.[44]

[33]    Best Appraisers argue that these three Claims against them must be dismissed because Plaintiffs' allegations (a) fail to allege facts sufficient to support their negligent misrepresentation Claim, (b) lack sufficient specificity to support their fraud Claim and (c) fail to allege facts sufficient to support an award of punitive damages.[45]

---

[44] The court recently entered an Opinion and Order in a factually similar case involving comparable claims alleged by purchasers of real property against the property appraisers. *See Anderson v. Coastal Cmtys. at Ocean Ridge Plantation, Inc.*, 2012 NCBC 33 (N.C. Super. Ct. May 30, 2012).
[45] Mem. Supp. Best Appraisers Mot. Dismiss 7-14, 18-21 ("Best Appraisers Memo").

1.

Negligent Misrepresentation

[34]    Best Appraisers seek dismissal of Plaintiffs' Sixth Claim, for negligent misrepresentation,[46] contending that Plaintiffs fail to allege particularized facts to support the Claim.[47]  Additionally, Best Appraisers argue that Plaintiffs allege facts of intentional conduct, which defeats their negligent misrepresentation Claim.[48]

[35]    Plaintiffs argue that they have properly pleaded a cause of action for negligent misrepresentation.  They contend that the absence of contractual privity between Best Appraisers and Plaintiffs is not a bar to recovery in tort since the borrower is an anticipated third-party beneficiary of the subject appraisal to whom the appraiser owes a duty of care in performing the appraisal.[49]  Plaintiffs further contend that they justifiably relied upon Best Appraisers to provide a fair market value appraisal for the respective lots Plaintiffs intended to purchase.[50]

[36]    In North Carolina, "[t]he tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care."  *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 206 (1988), *rev'd on other grounds*, 329 N.C. 646 (1991).

---

[46] Best Appraisers have not moved for dismissal of Plaintiffs' Eighth Claim.  Although the elements of a prima facie claim for negligence differ from those of a claim for negligent misrepresentation, the court could discuss both Claims together because they sound in the same theory of liability.  *See Williams v. United Cmty. Bank*, No. COA11-532, 2012 N.C. App. LEXIS 209 (N.C. Ct. App. Feb. 7, 2012) (analyzing appraiser negligence and negligent misrepresentation claims together).  However, because the Motion does not seek relief as to Plaintiffs' Eighth Claim, the court does not consider the Eighth Claim in this Opinion and Order.

[47] Best Appraisers Memo 19-20.

[48] *Id.* 17-18.

[49] *Id.* 15-16.

[50] *Id.* 19.  Plaintiffs allege that they relied on the representations of value provided by Appraiser Defendants and that their reliance upon the information was justified and reasonable.  Am. Compl. ¶ 344.

[37]     The North Carolina Court of Appeals, in *Ballance v. Rinehart*, held that a licensed real estate appraiser who performs an appraisal of real property, at the request of a client, owes a prospective purchaser of such property a duty to use reasonable care in the preparation of the appraisal if the appraiser knows the prospective purchaser will rely on the appraisal.  105 N.C. App. 203, 207-08 (1992).  The court of appeals in *Ballance* expressly adopted the test set forth by the supreme court in *Raritan* for determining negligence liability for accountants and applied it to real estate appraisers. *Williams*, 2012 N.C. App. LEXIS 209, at *16.  In turn, *Raritan* adopted a standard of liability set forth by the Restatement (Second) of Torts, which provides:

> Information Negligently Supplied for the Guidance of Others
>
> (1)   One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
>
> (2)     . . . [T]he liability stated in Subsection (1) is limited to loss suffered
>
> (a)     by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
>
> (b)     through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

*Raritan*, 322 N.C. at 209-10 (quoting Restatement (Second) of Torts § 552 (1977)).

[38]     Similar to an accountant, a real estate appraiser often performs an appraisal pursuant to a contract with an individual client, usually a lending institution,

which may later distribute the appraisal to a prospective purchaser-borrower. *Ballance*, 105 N.C. App. at 207-08. In such a situation, the real estate appraiser owes a duty to the prospective purchaser-borrower if the appraiser knows the lending institution intends to supply the appraisal to a prospective purchaser-borrower who will rely on the appraisal. *See Raritan*, 322 N.C. at 213 (quoting the Restatement (Second) of Torts § 552).[51]

[39] However, Plaintiffs asserting negligence-based claims against appraisers must allege facts showing justifiable reliance upon the appraisals complained of in order to survive a Rule 12 motion. *See Raritan*, 322 N.C. at 205 (affirming Rule 12(b)(6) dismissal of a negligent misrepresentation claim where the plaintiff failed to allege reliance).

[40] Plaintiffs in this case argue in substance that they indirectly relied on the appraisal reports.[52] However, the North Carolina Supreme Court, in *Raritan*, held that indirect reliance will not support a claim for negligent misrepresentation. *Id.* at 204. In *Raritan*, the plaintiff steel company ("Raritan") sued an accounting firm for losses incurred when it allegedly relied on inaccurate information contained in an audit report. *Id.* at 203. There, the Intercontinental Metals Corporation ("IMC") previously had hired an accounting firm to prepare an audit of IMC's financial information, which was published in its report. *Id.* Subsequently, IMC ordered raw steel from Raritan on an open credit account. *Id.* In determining whether to extend credit to IMC, Raritan investigated IMC's financial position and allegedly relied on a Dun & Bradstreet report

---

[51] The court need not address whether a duty existed in light of the court's ruling in this Opinion and Order that Plaintiffs have not established direct reliance on the appraisals.

[52] Plaintiffs never use the term "indirect reliance" in the Amended Complaint. However, as discussed below, the facts alleged clearly reflect that Plaintiffs' reliance on the appraisal reports was, at best, indirect.

describing IMC's net worth, which specifically referenced the accounting firm's audit report as the source for such information. *Id.* at 205. Raritan then decided to extend credit to IMC and later incurred losses from the transaction. *Id.* Raritan sued the accounting firm for negligent misrepresentation, claiming that the firm had misrepresented IMC's net worth in the audit report.

[41] The trial court dismissed Raritan's negligent misrepresentation claim, pursuant to Rule 12(b)(6), because Raritan's complaint admitted to having relied not on the defendant's audit report directly, but rather on the Dun & Bradstreet report that referenced the audit report. *Id.* at 204. The supreme court affirmed the trial court's ruling, holding:

> Raritan alleges that it got the financial information upon which it relied, essentially IMC's net worth, not from the audited statements themselves, but from information contained in Dun & Bradstreet. This allegation, we conclude, defeats Raritan's claim for negligent misrepresentation so as to render it dismissible under Rule 12(b)(6).
>
> . . . We conclude that a party cannot show justifiable reliance on information contained in audited financial statements without showing that he relied upon the actual financial statements themselves to obtain this information.

*Raritan*, 322 N.C. at 205-06. The supreme court further noted that a party cannot justifiably rely upon an isolated piece of data not presented in its original form because there is a danger that the party may be relying on incomplete information. Specifically, the court held:

> Isolated statements in the [audit] report, particularly the net worth figure, do not meaningfully stand alone; rather, they are interdependent and can be fully understood and justifiably relied on only when considered in the context of the entire report, including any qualifications of the auditor's

opinion and any explanatory footnotes included in the statements.

*Id.* at 207.

[42]     In sum, the court in *Raritan* affirmed dismissal of the plaintiff's negligent misrepresentation claim because the plaintiff did not *directly* rely upon the audit report it asserted was defective. *Id.* at 204 (emphasis added); *see also Brinkman v. Barrett Kays & Assocs., P.A.*, 155 N.C. App. 738, 742 (2003) (citing the North Carolina Pattern Jury Instructions for the rule that "[a]ctual reliance is direct reliance upon false information"). Applying *Raritan* to the present case, Plaintiffs must allege that they directly relied on the appraisal reports themselves in order to plead sufficiently a claim for negligent misrepresentation. 322 N.C. at 205-06. Post-*Raritan*, claims for negligent misrepresentation that have failed to allege direct reliance have been susceptible to dismissal.

[43]     The North Carolina Court of Appeals, consistent with *Raritan*, has held that a negligent misrepresentation claim cannot survive summary judgment where the plaintiffs can forecast only evidence of indirect, rather than direct, reliance. *Brinkman*, 155 N.C. App. at 743. In *Brinkman*, a group of homeowners brought a negligent misrepresentation claim against designers of a low-pressure pipe system, which connected on-lot septic tank effluent pump systems to off-lot collection and disposal systems. *Id.* at 739. The homeowners claimed that the designers of the system made false representations to the North Carolina Department of Environment and Natural Resources ("DENR") to obtain permits for the implementation of the system. *Id.* The homeowners alleged that they relied upon DENR's issuance of permits, and consequently the underlying misrepresentations, when deciding to purchase the

properties. *Id.* The trial court granted the defendants' motion for summary judgment on the plaintiffs' claim and the court of appeals affirmed, holding:

> There is no evidence . . . that there was actual reliance by plaintiffs upon defendants' statements. The statements were made to [DENR], which relied upon them and issued permits to defendants. Plaintiffs relied upon [DENR] to fully investigate defendants' application for permits. Plaintiffs relied upon the original permits and the re-issuance of the permits to conclude that their waste disposal system was functioning correctly. Finally, upon discovering the misrepresentations, plaintiffs relied upon the Attorney General and [DENR] to utilize their powers under the Clean Water Act to enforce the law. However, there is no evidence that plaintiffs relied upon statements made by defendants as required by Restatement § 552(1).

*Id.* at 743.

[44]    The *Brinkman* holding provides a conceptually instructive analogy to the present case. For example, Plaintiffs allege here that the sales from TRM to Plaintiffs were dependent upon the appraisal reports because Plaintiffs could not have obtained the financing to purchase the lots without the appraisal reports.[53] Plaintiffs allege that they would not have been able to purchase the lots unless the lots were determined to be sufficient collateral for the loans, as reflected by the appraisal reports.[54] Thus, Plaintiffs argue that by relying on HomeFocus and BOA's actions, they were also relying, albeit indirectly, upon Best Appraisers' representations provided to HomeFocus and BOA, which were contained in the appraisal reports. Similarly, the *Brinkman* plaintiffs argued that they relied on DENR to review and investigate the representations made by the defendants, before DENR decided to issue permits and approve the defendants' design. Thus, the *Brinkman* plaintiffs argued that by relying on DENR's

---

[53] Am. Compl. ¶ 97.
[54] *Id.* ¶ 98.

actions, they were also relying, albeit indirectly, on the representations made by defendants to DENR. *Id.* The court of appeals rejected such an argument and concluded that the foregoing factual scenario could not support a negligent misrepresentation claim because the plaintiffs could show only indirect reliance upon the alleged misrepresentations, which were relayed to the plaintiffs through the actions of an intermediary. *Id.*

[45] Recently, the North Carolina Court of Appeals, in *Williams v. United Community Bank*, affirmed the trial court's grant of summary judgment in favor of appraisers where the plaintiffs failed to forecast evidence of reliance to support their negligence claims. 2012 N.C. App. LEXIS 209, at *17-18. The *Williams* decision is instructive because the relevant facts are remarkably similar to the present case. For example, in that case, a group of plaintiffs purchased groups of lots in an undeveloped, proposed residential community. *Id.* at *2. The plaintiffs purchased the lots by taking out bank loans. *Id.* at *3. None of the purchase contracts "claimed that the purchase price was based on an appraisal, required an appraisal, or made [the plaintiffs'] obligations to buy the lots contingent on the results of any appraisal." *Id.* at *4. After the purchase contracts were signed, the developers helped the plaintiffs secure financing by directing their loan applications to various banks. *Id.* The banks, in turn, selected a group of appraisers to appraise the lots. *Id.* The plaintiffs' complaint alleged that they "had no knowledge of, contact with, nor control over the appraisal process[,]" which was instead "controlled by [the developers] and the banks." *Id.* at *13. Further, the plaintiffs acknowledged that they did not see any of the appraisals prior to closing on their loans. *Id.* at *14.

[46]     Based on the foregoing facts, the *Williams* court recognized that the plaintiffs contracted to purchase lots and close loans "without any awareness of, much less reliance on, the . . . appraisals." *Id.* at *15.  As such, the court held that the plaintiffs failed to forecast evidence of reliance on the appraisals because "they did not see and did not know [the appraisals] existed . . . ." *Id.*

[47]     Similar to the purchasers in *Williams*, Plaintiffs in the instant case purchased lots in mostly undeveloped, proposed residential communities.  Further, Plaintiffs allege that HomeFocus controlled the appraisal process.[55]  Indeed, HomeFocus obtained the appraisals on behalf of BOA.[56]  Plaintiffs do not allege that they ever viewed or read the appraisal reports prior to signing their purchase contracts or closing on their loans.  Instead, Plaintiffs allege, in conclusory fashion, that they "relied on the representations of value provided by [Best] Defendants and Plaintiffs' reliance upon the information was justified and reasonable, under the circumstances."[57]  Such an allegation constitutes nothing more than a legal conclusion and need not be accepted as true for purposes of a Rule 12(b)(6) motion.  *Sutton*, 277 N.C. at 98.

[48]     Plaintiffs' contentions are essentially based upon allegations of indirect reliance on the appraisal reports because HomeFocus and BOA presumably reviewed the reports and decided to close on their loans, implying that the lots appraised for the value of the loans.[58]  Thus, because the lenders decided to close on their loans,

---

[55] *Id.* ¶¶ 120-21, 131.  *See also id.* ¶¶ 135-161, 184-208 (listing specific examples showing that HomeFocus ordered the appraisals and controlled the appraisal process).
[56] *Id.* ¶¶ 120-23, 126-28.
[57] *Id.* ¶ 343.  Plaintiffs contend that Best Appraisers "knew that [Plaintiffs] relied on the accuracy of the appraisals [Best Appraisers] *submitted to HomeFocus* in order to receive financing."  Pls. Mem. Opp'n Best Defs. Mot. Dismiss 16-17 (emphasis added) ("Pls. Memo").
[58] Plaintiffs argue that HomeFocus "failed to maintain appraiser independence by manipulating the appraisal process in ordering multiple appraisals for the same lots from Best Appraisers."  Am. Compl. ¶ 119.

Plaintiffs assumed that the appraisal reports supported the loans and were not defective.

[49]    Plaintiffs' Amended Complaint makes it clear that Plaintiffs were not involved in the appraisal process, which was instead controlled by HomeFocus.[59] Plaintiffs do not allege that they viewed any of the appraisals prior to signing the purchase contracts.  Consequently, Plaintiffs do not, and apparently cannot, allege that they ever relied upon any appraisal of the property before they agreed to purchase. Further, Plaintiffs do not allege that they viewed the appraisals before closing on their loans with BOA.

[50]    A fair reading of the allegations indicates that Plaintiffs made their decisions to invest in the Summerhouse properties, and contracted to do so, without reliance on the appraisal reports.  Plaintiffs cannot have relied upon information they did not see or know existed at the time of their decisions to purchase.  *Williams*, 2012 N.C. App. LEXIS 209, at *15.

[51]    Following *Raritan*, *Brinkman* and *Williams*, the court must disagree with Plaintiffs' argument that they "justifiably relied on the appraisers to provide a fair market value for the lot they intended to purchase and were harmed as a result of the negligent misrepresentation."[60]  Direct reliance is what is required to state a claim here against Best Appraisers.  *Raritan*, 322 N.C. at 205-06; *Brinkman*, 155 N.C. App. at 743; *Williams*, 2012 N.C. App. LEXIS 209, at *13-17.  At best, Plaintiffs have alleged indirect reliance on that portion of the appraisal reports addressing fair market values.  Such

---

[59] Am. Compl. ¶¶ 120-21.
[60] Pls. Memo 19.

allegations, without more, are fatal to Plaintiffs' Sixth Claim. *Raritan*, 322 N.C. at 205-06.

[52]    Accordingly, in the absence of factual allegations supporting actual and direct reliance upon the appraisals, the court is forced to CONCLUDE that as to their Sixth Claim, for negligent misrepresentation, Plaintiffs have failed to state a claim upon which relief can be granted against Best Appraisers.  The Motion as to such Claim should be GRANTED, and the Sixth Claim should be DISMISSED.

2.

Fraud Claim

[53]    Similar to the above-mentioned negligence misrepresentation Claim, Plaintiffs' Seventh Claim against Best Appraisers, alleging fraud, is based on the alleged misrepresentations contained in the appraisal reports.[61]

[54]    Best Appraisers seek dismissal of Plaintiffs' fraud Claim on the grounds that it is not pleaded with the requisite particularity required by Rule 9 and is devoid of specific allegations pertaining to acts of Best Appraisers.[62]

[55]    As discussed above, the court has concluded that Plaintiffs have not alleged facts sufficient to show that they directly relied upon the representations made by Best Appraisers.  Consequently, because the lack of such allegations is fatal to Plaintiffs' fraud Claim, the court need not consider whether Plaintiffs have satisfied particularity requirement in alleging fraud.

[56]    Therefore, the court is forced to CONCLUDE that as to their Seventh Claim, for fraud, Plaintiffs have failed to state a claim upon which relief can be granted

---

[61] *See, e.g.,* Am. Compl. ¶¶ 346-55
[62] Best Appraisers Memo 7-14.

against Best Appraisers.  The Motion as to such Claim should be GRANTED, and the Seventh Claim should be DISMISSED.

3.

Punitive Damages

[57]    Pursuant to G.S. 1D-1, "Punitive damages may be awarded, in an appropriate case and subject to [certain] provisions . . ., to punish a defendant  for egregiously wrongful acts and to deter the defendant and others from committing similar wrongful acts."  A claimant must prove "that the defendant is liable for compensatory damages," and an "aggravating factor" of either fraud, malice or willful or wanton conduct "was present and was related to the injury for which compensatory damages were awarded[.]"  G.S. 1D-15(a).[63]

[58]    As discussed above, the court has concluded that Plaintiffs failed to state a claim for fraud upon which relief can be granted against Best Appraisers.  Plaintiffs have not alleged other facts or claims sufficient to show an aggravating factor to support their Thirteenth Claim for punitive damages.  Accordingly, the court CONCLUDES that the Motion as to such Claim should be GRANTED, and the Thirteenth Claim should be DISMISSED.

IV.

CONCLUSION

NOW THEREFORE, based upon the foregoing, it is ORDERED that:

[59]    Defendants Berthadale Best and Dale Best Realty & Appraisal Service, Inc.'s Motion to Dismiss Pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil

---

[63] The court notes that a claim for punitive damages is not an independent cause of action.  Rather, an award for punitive damages must stem from an actionable claim accompanied by an aggravating factor on the part of the wrongdoer.

Procedure is GRANTED as to Plaintiffs' (a) Sixth Claim for Negligent Misrepresentation, (b) Seventh Claim for Fraud and (c) Thirteenth Claim for Punitive Damages.  Each of said Claims is DISMISSED.

This the 7th day of June, 2012.